899 P.2d 959

STATE of Idaho, Plaintiff–Respondent,

v.

Benjamin TAPIA, Defendant–Appellant.

No. 20704.

Supreme Court of Idaho,
Boise, January 1995 Term.

June 29, 1995.

Terry S. Ratliff, Elmore County Public Defender, Mountain Home, for appellant.

Alan G. Lance, Atty. Gen., Michael A. Henderson, argued, Deputy Atty. Gen., Boise, for respondent.

SILAK, Justice.

This is an appeal from a conviction of two counts of conspiracy to commit lewd conduct with a minor. The appellant raises four issues regarding decisions made by the district court during the course of the trial. We affirm.

**I.**

## FACTS AND PROCEDURAL BACKGROUND

The victim in this case was P.C., who was eleven or twelve years old at the time of the crimes. P.C. had been living with her mother in Nevada, when in January 1991, she began living with Hortencia Castillo (Castillo), her natural grandmother, in Glenns Ferry, Idaho. Appellant Benjamin Tapia (Tapia) has been Castillo's boyfriend since 1974.

P.C. testified that the first incident involving her and Tapia happened in August 1991 (she thought it was August because it was warm), on a day when she, her grandmother and sister had gone to a birthday party for a friend's son. Thereafter, Castillo drove her to Bliss. There they met Tapia at the back of the Royal Cafe. Castillo told P.C. that she "was supposed to sleep with Benjamin" and told her to "ask for the money." Tapia got into the back seat of Castillo's car, and the three of them drove off onto a dirt road by the interstate. Once there, P.C. was told to get in the back seat with Tapia and to take off her clothing. Tapia then took off his clothing and had intercourse with P.C. During this incident, P.C. claimed that Castillo was sitting in the front seat of the car, talking with Tapia at the same time he was having intercourse with her. After the sexual intercourse took place, the three drove back to the Royal Cafe, whereupon Tapia gave P.C. $40.00 and a 12–pack of Pepsi.

The second incident happened approximately one month later, again in Bliss, Idaho. This time, Castillo and P.C. drove to Bliss, met Tapia at the same cafe and they again drove to the same dirt road. Tapia took a blanket and he and P.C. got out of the car and went over a small hill, while Castillo stayed in the car. At this point, Tapia decided that it was too cold, and they went back to the car. Inside the car, Tapia instructed P.C. to take off her clothing. He took off his pants and had sexual intercourse with her. Castillo was seated in the front seat of the car while this was occurring. P.C. testified that the next day, Tapia took her and Castillo

to Boise to buy clothing and to treat them to dinner.

The third incident occurred in approximately March 1992. One night, when Tapia was at Castillo's house, P.C. went into her grandmother's bedroom with him. Castillo told P.C. to "do it for her." Tapia had sexual intercourse with P.C. in the bedroom.

The fourth incident occurred in April 1992. At Castillo's direction, P.C. came into her grandmother's bedroom where she and Tapia were lying on the bed. Castillo got up and left the room, whereupon Tapia had sexual intercourse with P.C.

Following this incident, P.C. decided to talk about what had been happening. She told a nurse and a counselor at her school, and she was removed from Castillo's house in April 1992.

Tapia and Castillo were charged with four counts of conspiracy to commit lewd conduct pursuant to I.C. § 18–1508 and I.C. § 18–1701. Counts I and II charged conspiracies occurring in August and September, respectively, of 1991, referring to the sexual acts occurring in the desert near Bliss. Counts III and IV referred to the sexual acts that occurred at Castillo's house. Following a preliminary hearing, Tapia was bound over on Counts I, II and IV. For reasons not apparent from the record, the information subsequently filed by the state charged Tapia only with Counts I and II. Following Castillo's preliminary hearing, she was bound over on all counts. Tapia's and Castillo's cases were consolidated for trial, which took place in March 1993. They were brought to trial on only the first two counts. During the course of the trial, while the state was still putting on its case, the prosecution discovered that the birthday party attended by Castillo and P.C. had actually taken place in March 1991, not August. Accordingly, the state moved to amend both counts in the respective informations to allege that each conspiracy had occurred between the months of March and September 1991. The district court granted the motion over the objections of the defendants.

During the trial, the state discovered additional witnesses who had information concerning this case. At the time of trial, P.C. was living with a foster mother named Andrea Alaniz. On the third day of trial, Alaniz was having a conversation with her sister, Beatriz Meza, and her mother, Beatriz Guajardo. Alaniz stated that she doubted the veracity of P.C.'s accusations, and Meza responded by telling her about a conversation that she had had with Castillo about two years earlier, or around 1991, in which Castillo discussed Tapia's desire for a young woman, G.M. (Meza's cousin), and for the victim, P.C. Castillo apparently told Meza that Tapia was "interested in" and "after" P.C. when she was nine years old, and that he wanted Castillo to "give" P.C. to him, but Castillo said that she was too young. At the time of the conversation, Tapia was continuing to urge Castillo to bring P.C. to him, claiming that it would now be acceptable for him to "have" P.C. since she had reported being abused by her stepfather and was no longer a virgin.

The police became aware of the conversation that took place during the trial between P.C.'s foster mother and her sister and mother. The prosecuting attorney was informed about the new witnesses and their possible testimony, and defense counsel was told a few minutes later. Supplemental discovery was provided to defense counsel that same afternoon. The next morning, the court granted defense counsel's request for a continuance to interview the new witnesses. The court recessed at 10:25 a.m. and reconvened the following morning.

Meza and Guajardo were then called as witnesses for the state over the objections of defense counsel. Defense counsel also moved for a 30–day continuance which the court denied.

Meza testified about Castillo's statements concerning Tapia and P.C. and G.M. Her testimony regarding G.M., however, was confusing and gave the impression that G.M. was 17 or 18 years old when Tapia first expressed an interest in her. The court concluded that Tapia's interest in a young woman of 17 or 18 was not sufficiently similar to the charged acts of having intercourse with a girl of 11 or 12 to warrant the admission of

the testimony. Meza's testimony was therefore stricken from the record.

Guajardo testified about the portion of the conversation that she had heard, recalling that Castillo said that Tapia was "after" P.C.

Castillo testified in her own defense, and admitted having a conversation with Meza in which she talked "about when Benjamin was going out with [G.M.]" She denied any discussion at the time about P.C. She also testified that she only discussed G.M.'s going out with Tapia when she was 21 or 22, and definitely over the age of 18.

Meza was recalled by the state as a rebuttal witness. This time she was able to relate what Castillo had told her about G.M. in a coherent fashion. She testified that Castillo told her during their conversation that Tapia had been interested in G.M. when she was 12 years old.

Tapia was convicted of two counts of conspiring to commit lewd conduct with a minor, and received a sentence of six to fifteen years. He filed this appeal.

## II.

## ISSUES ON APPEAL

1. Whether the district court abused its discretion by allowing the state, on the sixth day of trial, to amend the information, enlarging the time within which the alleged crime took place, from August and September 1991, to March through September 1991.
2. Whether the district court abused its discretion in allowing two new witnesses to present testimony regarding statements made to them in 1981 and 1985.
3. Whether the district court abused its discretion in failing to grant the continuance requested, in order to allow counsel additional time to prepare and gather evidence to rebut testimony of the new witnesses.
4. Whether the district court abused its discretion in allowing "subsequent bad acts" of Tapia to be presented to the jury, when the allegations of said "subsequent bad acts" were not connected in time or place to the allegations in the information filed with the court.

## III.

## ANALYSIS

**A. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING THE STATE TO AMEND THE INFORMATION BY ENLARGING THE TIME WITHIN WHICH THE CRIMES TOOK PLACE.**

Tapia argues that the district court abused its discretion by allowing the state, on the sixth day of trial, to amend the information, enlarging the time within which the alleged crime took place, from August and September 1991, to March through September 1991. Tapia claims that such an amendment violated his substantial rights as he was not given sufficient time within which to prepare an adequate defense.

■ Pursuant to I.C.R. 7(e), a court may permit a complaint, information or indictment to be amended at any time before the prosecution rests if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced. The decision to permit an amendment to the information lies within the sound discretion of the trial court. *State v. LaMere,* 103 Idaho 839, 841–42, 655 P.2d 46, 48–49 (1982).

■ The information originally stated that the conspiracies charged in Counts I and II took place in August and September 1991 respectively. During the presentation of its case at trial, the state moved to amend the information because of newly discovered evidence indicating that the first act of lewd conduct had occurred on the weekend of March 30, 1991, not in August 1991. The district court allowed the amendment over the objection of defense counsel. The information was amended well before the state rested, and the amended information did not charge any additional or different offense. Thus, under I.C.R. 7(e), Tapia's only remaining challenge to the amendment is to show that his substantial rights were prejudiced. This he has failed to do.

Tapia claims that the amendment to the information surprised him and that it did not allow him to present his defense of alibi for the entire additional time frame. This Court has held that "time is not a material ingredient in the offense of lewd and lascivious conduct with a minor":

> [T]he information need only be specific enough to enable the defendant to prepare his defense and to protect him from being subsequently prosecuted for the same offense. *See, e.g., State v. Gumm,* 99 Idaho 549, 585 P.2d 959 (1978). Any other rule would too often preclude prosecutions in this type of case where the victims are minors and where the crimes are not discovered until some time after their commission. As we noted in *State v. Rogers,* 48 Idaho 567, 570, 283 P. 44, 45 (1929), quoting the attorney general, "[i]t would be a very weak rule of law that would permit a man to ravish a fifteen year old girl ... and then say in effect: 'You cannot convict me of this crime, as you did not guess the right date.'"

*State v. Roberts,* 101 Idaho 199, 200, 610 P.2d 558, 559 (1980).

Although it is possible that a defendant in a lewd conduct case could show that his substantial rights were prejudiced by an amendment such as the one in the present case, Tapia has not done so. In order to show that his substantial rights were prejudiced by the amendment with respect to his alibi defense, he would have to show that he had prepared an effective alibi defense to the charge as originally stated, and that the lateness of the amendment prevented his preparation of a comparably effective alibi defense to the amended charge. The record indicates that Tapia filed a notice of alibi defense the month prior to the commencement of the trial, but it is not clear what alibi evidence he could have produced to cover the time period alleged in the original information. During the argument on the state's motion to amend the information, defense counsel referred to "documents" that he had obtained pertaining to the months of August and September 1991. These apparently were employment records. However, at the trial, Tapia was ultimately able to produce the same type of employment records for almost the entire period alleged in the amended information. He introduced copies of his time cards for the period of March 18 to December 6 of 1991. The cards for August and September of 1991 were some evidence of Tapia's whereabouts during those months, but they did not approach a convincing alibi defense because they obviously left much of his time unaccounted for. Thus, we hold that Tapia has failed to show that he had an effective alibi defense that was nullified by the amendment of the information and has failed to show that his substantive rights were prejudiced by the amendment.

## B. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING TWO NEW WITNESSES TO PRESENT TESTIMONY AT TRIAL PURSUANT TO I.R.E. 403 AND 404(b).

Tapia argues that the district court abused its discretion in allowing Beatriz Meza and Beatriz Guajardo to testify on behalf of the state at his trial. He claims that they testified about conversations they had with Castillo in 1981 and 1985 which the state offered for purposes of showing a common plan or scheme under I.R.E. 404(b). Tapia argues that such testimony did not amount to evidence of a scheme, intent or plan, and that the testimony about conversations that allegedly took place in 1981 and 1985 was so remote that the effect was highly prejudicial. We disagree.

Beatriz Meza was the first of the two newly discovered witnesses to testify. She first testified about her conversation with Castillo in which Castillo told her that Tapia had been "interested" in and "wanted" G.M., Meza's cousin. Because Meza apparently became confused regarding the dates and the age of G.M. at the time Tapia had allegedly been interested in her, and testified that G.M. was over eighteen, Meza's testimony was stricken from the record. This testimony is therefore not an issue before us.

Meza next testified about her conversation with Castillo regarding Tapia's interest in P.C. Beatriz Guajardo, Meza's mother, then

corroborated the testimony given by Meza regarding Tapia's interest in P.C.

Later, Castillo testified in her own defense and admitted having a conversation with Meza about Tapia being interested in G.M., but stated that she only discussed Tapia going out with G.M. when she was over eighteen years old. Castillo also denied having any discussion at the time concerning P.C.

Meza was recalled by the state as a rebuttal witness. She testified that Castillo told her during their conversation that Tapia had been interested in G.M. when she was twelve years old.

On appeal, the only testimony at issue here is Meza's testimony regarding her conversation with Castillo about Tapia and P.C., and Guajardo's corroborating testimony. Meza's testimony during the state's case-in-chief regarding G.M. was stricken from the record. Meza's rebuttal testimony is not at issue because Tapia's counsel did not timely object at trial, and any issue regarding the rebuttal testimony is therefore not preserved on appeal. In any event, Tapia does not appear to challenge the rebuttal testimony. Thus, we will only address whether the district court abused its discretion in admitting the second portion of Meza's testimony during the state's case-in-chief, and Guajardo's testimony.

 Tapia argues that the testimony of Meza and Guajardo did not meet the requirements for the admission of evidence of other bad acts. Two provisions of the Idaho Rules of Evidence guide the admissibility of evidence of uncharged acts of misconduct: I.R.E. 403 and I.R.E. 404(b). Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Rule 404(b) provides that generally, evidence of other criminal acts or offenses is inadmissible to prove the character of a person in order to show that he committed the crime for which he is on trial, but that such acts may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." I.R.E. 404(b); *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991).

A two-tiered analysis is used to determine the admissibility of evidence concerning uncharged misconduct. First, the trial court must determine that the evidence is relevant. Second, the trial court must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *State v. Zimmerman,* 121 Idaho 971, 977–78, 829 P.2d 861, 867–68 (1992); *State v. Moore,* 120 Idaho at 745, 819 P.2d at 1145. The balancing process is then left to the sound discretion of the trial court. *State v. Odiaga,* 125 Idaho 384, 388, 871 P.2d 801, 805 (1994); *State v. Zimmerman,* 121 Idaho at 978, 829 P.2d at 868.

With respect to this Court's standard of review of the district court's admission of the testimony of Meza and Guajardo, we also employ a two-step analysis. First, whether evidence is relevant is an issue of law. *State v. Raudebaugh,* 124 Idaho 758, 864 P.2d 596 (1993); *Mac Tools, Inc. v. Griffin,* 126 Idaho 193, 199, 879 P.2d 1126, 1132 (1994); *Lubcke v. Boise City/Ada Cty. Hous. Auth.,* 124 Idaho 450, 466, 860 P.2d 653, 669 (1993). Therefore, this Court exercises free review of the district court's relevancy determination. Second, the trial court's conclusion that the probative value of the evidence is not outweighed by its unfair prejudice is reviewed under an abuse of discretion standard. *State v. Rhoades,* 119 Idaho 594, 603, 809 P.2d 455, 464 (1991).

We hold that the evidence concerning Tapia's sexual interest in P.C. was properly admitted. Beatriz Meza testified that Castillo told her about Tapia's interest in P.C. According to Meza, Castillo told her that Tapia had been "interested in" and "after" P.C. when she was nine years old; that Castillo told Tapia at that time that P.C. was "too young"; that Tapia continued to urge Castillo to bring P.C. to him; and that Tapia had reasoned that because P.C. had reportedly been molested by her stepfather, she

was no longer a virgin, and therefore "he saw no reason why he couldn't have P.C." Further, Beatriz Guajardo's testimony provided corroboration. She testified that Castillo had said that Tapia was "after P.C." The statements by Castillo were made about two years before the March 1993 trial, or sometime around March 1991.[1] The record indicates that March 1991 was the month in which Tapia first committed lewd acts upon P.C.

All of Castillo's statements, whether viewed as evidence of uncharged misconduct or not, were highly probative. They were evidence of Tapia's scheme or plan to subject a particular eleven year old girl to sexual acts through the assistance of Castillo. They showed the preparations undertaken by Tapia to put his plan into action and his intent to gratify his sexual desire for this adolescent girl. Thus, we hold that this evidence was clearly relevant to the issues before the jury. We also hold that the probative value of the testimony was not substantially outweighed by the danger of unfair prejudice; this is particularly true since the testimony did not describe any additional sexual acts by Tapia. Therefore, the district court properly exercised its discretion in admitting this evidence.

## C. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING TAPIA'S MOTION FOR A THIRTY–DAY CONTINUANCE.

In addition to objecting to the testimony of Meza and Guajardo, Tapia requested a thirty-day continuance which the district court denied. Tapia contends that the court's ruling constituted error. We disagree.

■ The decision to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Ransom,* 124 Idaho 703, 706, 864 P.2d 149, 152 (1993); *State v. Rhoades,* 120 Idaho 795, 812, 820 P.2d 665, 682 (1991). This Court has held that where the denial of a motion to continue is attacked on the basis of late disclosure or discovery of evidence, the alleged tardiness of the disclosure must be shown to so prejudice the defendant's case preparation that a

fair trial was denied. *State v. Fetterly,* 109 Idaho 766, 770, 710 P.2d 1202, 1206 (1985), *cert. denied,* 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *State v. Smoot,* 99 Idaho 855, 858–59, 590 P.2d 1001, 1004–05 (1978). To prove prejudice, a defendant must show there is a reasonable probability that, but for the late disclosure of evidence, the result of the proceedings would have been different. *See, e.g., State v. Spradlin,* 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct.App.1991). Further, the bare claim that additional investigation could have been conducted is not sufficient to demonstrate unfair prejudice so as to support a motion for a continuance. *Id.*

■ In the present case, both Tapia and Castillo were given a one-day continuance to meet with and discover the testimony of the newly discovered witnesses. Both counsel were given full access to the new witnesses, and they conducted a thorough, recorded interview with them. When the trial resumed the next day, and Meza and Guajardo were called to testify, it was then that defense counsel requested the additional thirty-day continuance. However, they did not indicate how such a lengthy continuance could be used to their clients' advantage. For example, they did not state that they had tried to locate additional witnesses to Castillo's statements but had been unable to do so. Counsel for Castillo merely described the purpose of the requested continuance as "to try and establish some method of investigating whether or not the supposed conversations, the substance of the supposed conversations actually occurred and whether there were witnesses there, too, to rebut the same." Tapia and Castillo did not show what investigative methods they might have used or what additional evidence they could have established with the extra time. Thus, we hold that Tapia's argument on appeal amounts to nothing more than the kind of bare claim that falls short of demonstrating unfair prejudice, and that he has, therefore, failed to show that the district court abused its discretion in denying his motion for a continuance.

---

1. Tapia's argument that the testimony was about conversations that occurred in 1981 and 1985 and were too remote in time, is therefore, without merit.

### D. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN ADMITTING TESTIMONY ABOUT TWO SUBSEQUENT ACTS OF SEXUAL INTERCOURSE BY TAPIA WITH THE VICTIM.

■ Tapia contends that the district court erred in allowing P.C. to testify about the occurrences in March and April 1992, when she had sexual intercourse with Tapia in her grandmother's home and at her grandmother's prompting. Tapia claims that the district court misapplied the law as it relates to uncharged, subsequent acts of Tapia to show a common scheme or plan. We hold that the district court properly exercised its discretion in admitting this evidence for two reasons.

First, the testimony is relevant and its probative value is not outweighed by any prejudicial effect. The testimony reflected a common scheme or plan to use Castillo's influence over her granddaughter to compel her to have sexual intercourse with Tapia. The testimony was also relevant to show why P.C. did not report Tapia's conduct until the end of April 1992. The evidence of the acts committed upon her by Tapia near Bliss in 1991, if considered alone, would have raised a substantial question as to why P.C. waited for several months before reporting those incidents. The testimony concerning the subsequent acts in March and April 1992 provided the answer: the abuse had been brought into her own home, and as she testified, she did not want it to happen anymore.

Tapia appears to argue that this testimony was inadmissible for the most part because it concerned acts that occurred subsequent to the charged acts, rather than before. However, such a distinction was expressly rejected in *State v. Tolman*, 121 Idaho 899, 828 P.2d 1304 (1992):

> We have dealt with this issue on previous occasions and rejected the notion that evidence of subsequent misconduct is *per se* inadmissible. *State v. Stratford*, 55 Idaho 65, 37 P.2d 681 (1934).
>
> In *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982), the Court of Appeals stated:

> The threshold question regarding admission of evidence of other crimes is relevancy. No logical distinction between prior and subsequent crimes is apparent to justify a *per se* rule of the sort appellant asserts. The very rule appellant asserts has been tested and rejected. (Citation omitted).

> 102 Idaho at 798, 641 P.2d at 344.

121 Idaho at 905, 828 P.2d at 1310. Thus, we hold that the testimony concerning subsequent acts was highly probative. It was evidence of a common and continuing scheme or plan, and it served to explain a delay in reporting that would otherwise have provided a basis for questioning P.C.'s credibility.

■ The second reason we hold that this testimony was properly admitted by the trial court is that it is evidence of the conspiracy itself. I.C. § 18–1701 defines criminal conspiracy as follows:

> If two (2) or more persons combine or conspire to commit any crime or offense prescribed by the laws of the state of Idaho, and one (1) or more of such persons does any act to effect the object of the combination or conspiracy, each shall be punishable upon conviction in the same manner and to the same extent as is provided under the laws of the state of Idaho for the punishment of the crime or offenses that each combined to commit.

The record indicates that in March 1992, when Tapia was at Castillo's house, P.C. went into her grandmother's bedroom with him, that Castillo told P.C. to "do it for her," and that Tapia then had sexual intercourse with P.C. in the bedroom. The record further indicates that in April 1992, at her grandmother's direction, P.C. came into her grandmother's bedroom where Tapia and Castillo were lying on the bed, that her grandmother got up and left the room, and that Tapia again had sexual intercourse with P.C. This testimony clearly shows that Tapia and Castillo conspired to commit the acts of lewd conduct upon P.C., and such evidence was relevant to prove a conspiracy to commit the earlier charged acts. Therefore, we hold it was properly admitted.

## IV.

### CONCLUSION

The district court did not abuse its discretion in allowing the state to amend the information by enlarging the time within which the crimes took place. I.C.R. 7(e) permits an amendment of an information at any time before the prosecution rests if no additional or different offense is charged. Further, Tapia did not show that his substantial rights were prejudiced by the amendment.

The district court did not abuse its discretion in admitting Beatriz Meza's and Beatriz Guajardo's testimony pursuant to I.R.E. 403 and 404(b). The testimony regarding a conversation that Meza and Guajardo had with Castillo in which Castillo described Tapia's interest in P.C. was relevant, its probative value was not substantially outweighed by the danger of prejudice, and it was admissible as evidence of Tapia's scheme or plan to subject P.C. to sexual acts through the assistance of her grandmother.

The district court did not abuse its discretion in denying Tapia's motion for a thirty day continuance because he did not indicate how such a continuance could be used to his advantage or what additional evidence he could have established with the extra time.

The district court did not abuse its discretion in admitting P.C.'s testimony concerning the two subsequent acts of sexual intercourse by Tapia with P.C. at Castillo's home in March and April 1992. Pursuant to I.R.E. 404(b), the testimony clearly reflected a common scheme or plan to use Castillo's influence over P.C. to compel her to have sexual intercourse with Tapia. Further, the testimony was properly admitted because it was evidence of the conspiracy itself pursuant to I.C. § 18–1701.

Accordingly, the judgment of the district court is affirmed.

McDEVITT, C.J., JOHNSON, and LANSING and TRANSTRUM, JJ. Pro Tem., concur.