**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47796**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 9, 2020** |
| **Plaintiff-Appellant,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| ALEJANDRA MARIA OCHOA, | ) |
| | ) |
| **Defendant-Respondent.** | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. D. Duff McKee, District Judge. Hon. Jerold W. Lee, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, vacating judgment of conviction for misdemeanor vehicular manslaughter, reversed.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Aaron Bazzoli, Canyon County Public Defender; Jill B. Musser, Deputy Public Defender, Caldwell, for respondent. Jill B. Musser argued.

---

LORELLO, Judge

The State appeals from a decision of the district court, on intermediate appeal from the magistrate court, vacating Alejandra Maria Ochoa's judgment of conviction for misdemeanor vehicular manslaughter and remanding for a new trial. We reverse.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Ochoa made a left turn from the parking lot of a convenience store without stopping before entering the roadway. The victim, who was approaching on a motorcycle from Ochoa's left, collided with the side of Ochoa's vehicle before she completed her turn. The victim was transported by ambulance to a hospital where he died hours later. Subsequent investigation

1

revealed the presence of controlled substances in the victim's blood and a small bag of heroin on his person. The State charged Ochoa with misdemeanor vehicular manslaughter for her role in the accident. I.C. § 18-4006. Ochoa pled not guilty.

Prior to trial, the State moved in limine to exclude evidence of the controlled substances found in the victim's blood and on his person. The magistrate court initially granted the motion as to the drugs found on the victim's person. Then, after an evidentiary hearing, the magistrate court granted the remainder of the motion, concluding that the toxicology evidence did not, by itself, indicate that the victim was impaired and was, therefore, irrelevant and substantially more prejudicial than probative. Consequently, Ochoa was barred from inquiring into whether the controlled substances in the victim's blood contributed to the accident or the medical complications resulting in the victim's death.

After the magistrate court denied a series of motions from Ochoa seeking to continue the trial, the case was tried to a jury. During trial and over a hearsay objection by Ochoa, the magistrate court allowed the State's pathologist to testify regarding the contents of medical records he reviewed that detailed the victim's injuries. The jury found Ochoa guilty, and she appealed to the district court.

On intermediate appeal, the district court vacated Ochoa's judgment of conviction and remanded the case for a new trial, concluding that the magistrate court erred in excluding the toxicology evidence, failing to grant Ochoa's final request to continue the trial, and permitting the State's pathologist to testify about the contents of the victim's medical records.[1] The State appeals the district court's decision on intermediate appeal.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, we review the magistrate court record to determine whether there is substantial

---

[1]     The district court did not address Ochoa's argument that the magistrate court erred by failing to sanction the State for alleged discovery violations. However, Ochoa has not presented any cogent argument or authority addressing that issue. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Consequently, Ochoa has waived the issue.

2

and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

## III.

## ANALYSIS

The State contends the district court erred in vacating Ochoa's judgment of conviction and remanding for a new trial by holding that evidence of the victim's blood toxicology was erroneously excluded, that Ochoa's request for a continuance was improperly denied, and that the State's pathologist should have been precluded from testifying to the contents to the victim's medical records. Ochoa responds that the district court properly vacated her judgment of conviction and remanded the case for a new trial. We hold that the district court erred in vacating Ochoa's judgment of conviction for misdemeanor vehicular manslaughter.

### A.    Toxicology Evidence

The State argues that the district court erred in concluding that evidence of the victim's blood toxicology was relevant and that the danger of unfair prejudice posed by the evidence did not substantially outweigh its probative value. According to the State, there was insufficient evidence for the jury to conclude, without resorting to speculation, that the presence of controlled substances in the victim's blood contributed to either the accident or the medical complications that resulted in the victim's death. Moreover, because Ochoa was allowed to present evidence that the victim was speeding and braked inefficiently just prior to the accident, the State asserts that any minimal relevance the toxicology evidence held was substantially outweighed by the risk of jury speculation and juror bias against the victim.

The decision to admit or exclude evidence falls within the sound discretion of the trial court. *State v. Folk*, 162 Idaho 620, 625, 402 P.3d 1073, 1078 (2017). Evidence relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Stewart*, 161 Idaho 235, 237, 384 P.3d 999, 1001 (Ct. App. 2016). Evidence is relevant if it has any

3

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Stewart*, 161 Idaho at 237, 384 P.3d at 1001. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). When an expert's testimony is speculative, it is properly excluded as irrelevant. *State v. Marks*, 156 Idaho 559, 563, 328 P.3d 539, 543 (Ct. App. 2014). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

However, a trial court must exclude relevant evidence under I.R.E. 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *State v. Abdullah*, 158 Idaho 386, 439, 348 P.3d 1, 54 (2015). A trial court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Ochoa was charged with committing vehicular manslaughter as defined under I.C. § 18-4006(3)(c):

> Manslaughter is the unlawful killing of a human being . . . . It is of three (3) kinds:
> . . . .
> (3)      Vehicular--in which the operation of a motor vehicle is a significant cause contributing to the death because of:
> . . . .
> (c)      The commission of an unlawful act, not amounting to a felony, without gross negligence.

Although the statutory text identifies no culpable mental state, this Court has interpreted I.C. § 18-4006 to require at least ordinary negligence by the defendant. *State v. McNair*, 141 Idaho 263, 267, 108 P.3d 410, 414 (Ct. App. 2005). Additionally, the defendant's driving must be more than a negligible or indirect cause of the victim's death. *McKay v. State*, 148 Idaho 567, 572, 225 P.3d 700, 705 (2010).

4

Prior to trial, the prosecutor moved in limine to exclude any evidence of controlled substances in the victim's blood, including methamphetamine, amphetamines and methadone,[2] along with the heroin discovered on the victim's person. The prosecutor argued that the evidence was irrelevant because nothing showed how the controlled substances in the victim's blood or on his person contributed to the accident. The magistrate court granted the State's motion as to the heroin found on the victim's person, but reserved ruling on the blood toxicology evidence to give Ochoa an opportunity to present evidence showing that the controlled substances in the victim's blood contributed to the accident.

During the subsequent evidentiary hearing, the magistrate court heard testimony from Ochoa's accident reconstruction expert (a former police officer and drug recognition expert), the State's accident reconstruction expert (an active duty police officer), and the pathologist who determined the victim's cause and manner of death. Ochoa's accident reconstruction expert testified that methamphetamine can impair a driver's decision-making by distorting the perception of time and distance. Despite having never examined the victim, Ochoa's expert further testified that, in his opinion, methamphetamine was a "contributing factor" to the accident based upon the chemical's presence in the victim's blood and his driving pattern--specifically his high rate of speed; his attempt to avoid the crash by driving around the front of Ochoa's vehicle, rather than behind; and his use of only the motorcycle's rear brake. However, Ochoa's expert admitted on cross-examination that he could not determine whether the victim was impaired from only his toxicology results and that an unimpaired individual might exhibit the same driving pattern. The State's accident reconstruction expert testified that he did not know whether the victim was impaired and clarified that a notation in his accident report that the victim was "under the influence" of methamphetamine at the time of the accident meant only that the amount of methamphetamine in his blood exceeded "therapeutic" levels.[3] The pathologist, the only witness

---

[2]     According to representations by Ochoa's counsel before the magistrate court, a toxicology report disclosed on the eve of trial also indicated the victim may have been using alcohol and cannabinoids. However, the report is absent from the record on appeal, so its precise contents are unknown.

[3]     The amount of methamphetamine in the victim's blood was approximately 1.7 times the therapeutic range identified in the Toxicology Analytical Methods for the Idaho State Police

5

with experience interpreting toxicology results, testified that individuals with the same level of a controlled substance in their blood may behave differently and that the victim would have died from his injuries regardless of the presence of methamphetamine in his blood. Based on this testimony, the magistrate court found that none of the three witnesses could opine with a reasonable degree of certainty that the victim was impaired. Consequently, the magistrate court concluded that any testimony from the three witnesses regarding whether the controlled substances in the victim's blood caused the accident would be excluded as speculative. During trial, the magistrate court extended the exclusion to cover testimony regarding whether the controlled substances in the victim's blood contributed to his death.

On intermediate appeal, the district court concluded it was error to exclude evidence of the victim's blood toxicology. The district court reasoned that the issue of Ochoa's negligence (an element of misdemeanor vehicular manslaughter) carried with it the issue of the victim's comparative negligence. That is, a fact-finder could not determine whether Ochoa was negligent without also considering whether the victim was negligent. Furthermore, despite acknowledging the absence of evidence showing that controlled substances in the victim's blood contributed to the accident, the district court held that it was the State's burden to prove that the victim was *not* impaired. According to the district court, the jury had to consider "all factors that might have led to the victim's death" and the exclusion of the victim's toxicology results limited the jury to considering only Ochoa's conduct. The State faults the district court for ignoring the magistrate court's preliminary factual findings and applying an incorrect legal standard. We agree with the State.

We begin our analysis by considering the State's burden of proof. The State had the burden of proving only that Ochoa's negligent driving was a significant cause of the victim's death. *See* I.C. § 18-4006(3)(c). Satisfying this burden did not require the State to affirmatively *disprove* that any other cause was also a proximate cause of the victim's death. *See* 40 AM. JUR. 2D *Homicide* § 13 (1968). This is especially true where, as here, there is no competent evidence supporting the

Forensic Services. However, the prosecution's accident reconstruction expert did not know how this level of methamphetamine affected the victim.

6

other proposed cause (i.e., the victim driving while impaired). Thus, the State did not have to prove that the victim was not impaired.

Turning to the issue of the victim's comparative negligence, Ochoa's negligent operation of a vehicle needed only to be a significant cause of the victim's death--not the sole cause or even primary cause. *See* I.C. § 18-4006(3)(c). Ochoa acknowledged as much at oral argument. Thus, proving that a victim was also negligent does not necessarily negate any essential element of misdemeanor vehicular manslaughter. In short, neither a victim's contributory nor comparative negligence are a defense to a misdemeanor vehicular manslaughter charge. *See State v. Long*, 91 Idaho 436, 443-44, 423 P.2d 858, 865-66 (1967) (holding that "the theory of contributory negligence has no part" in a prosecution for vehicular manslaughter). This does not, however, mean that a victim's negligence is irrelevant. As part of the circumstances in which a defendant is acting, evidence of a victim's negligence is relevant to the determination of whether the defendant was culpably negligent or caused the victim's death. 61A C.J.S. *Motor Vehicles* § 1676 (1970).

Although evidence of the victim's negligence was relevant to Ochoa's misdemeanor vehicular manslaughter charge, it does not follow that evidence of the victim's blood toxicology was also relevant. Evidence of the presence of controlled substances in a driver's blood, by itself, does not support an inference regarding the cause of an accident. *See State v. Robinett*, 141 Idaho 110, 113, 106 P.3d 436, 439 (2005) (holding evidence of blood alcohol content, by itself, irrelevant to an impairment-theory driving under the influence charge); *see also Pennsylvania v. Todaro*, 446 A.2d 1305, 1306 (Pa. Super. Ct. 1982) ("Evidence of blood alcohol, alone, does not support any inference as to the cause of the accident."). There must be additional evidence showing how the controlled substances contributed to the accident by, for example, impairing the driver.

Neither the State's accident reconstruction expert nor the pathologist opined that the victim was driving impaired or that the controlled substances in the victim's blood contributed to his death. Thus, the only evidence in the record indicating that the controlled substances in the victim's blood contributed to his death or the accident is testimony from Ochoa's accident reconstruction expert. Ochoa's expert testified, however, that he never examined the victim and could not determine whether the victim was impaired based solely upon toxicology reports. Although Ochoa's expert testified that the victim's decision-making and driving pattern were

consistent with someone impaired by controlled substances, Ochoa's expert admitted on cross-examination that a sober individual could exhibit the same behavior. Notably, Ochoa's expert did not testify to knowledge of the victim's driving ability to support a belief that it was more likely that the victim's driving pattern resulted from impairment as opposed to reflexive actions taken to avoid an accident. In light of this, the testimony of Ochoa's expert would suggest the mere possibility that the victim *might* have been driving impaired. Trial courts may exclude expert opinions that merely suggest possibilities. *State v. Caliz-Bautista*, 162 Idaho 833, 838, 405 P.3d 618, 623 (Ct. App. 2017) (affirming exclusion of expert testimony that was merely speculative and only suggested possibility that evidence was contaminated).

In sum, evidence of a victim's negligence is potentially relevant to a charge of misdemeanor vehicular manslaughter. However, Ochoa failed to present evidence showing that the controlled substances in the victim's blood impaired his driving or otherwise contributed to his death. Ochoa is not entitled to present, nor is the jury entitled to hear, irrelevant evidence.[4] *See State v. Roach*, 157 Idaho 551, 556, 337 P.3d 1280, 1285 (Ct. App. 2014). Ochoa failed to show that evidence of the victim's blood toxicology was relevant. Consequently, the district court erred in concluding the magistrate court abused its discretion in excluding evidence of the victim's blood toxicology.[5]

---

[4]     At oral argument, Ochoa directed the Court to *State v. Windsor*, 110 Idaho 410, 716 P.2d 1182 (1985), for the proposition that a jury is entitled to consider all evidence related to a crime. In *Windsor*, the Court noted that "a jury is entitled to base its decision upon a full and complete description of the events surrounding the commission of a crime." *Id*. at 416, 716 P.2d at 1188. This statement does not mean a jury is entitled to consider inadmissible evidence. The quoted statement from *Windsor* was made in the context of analyzing whether the evidence at issue was relevant and not unfairly prejudicial. *Id.* Because the victim's blood toxicology was not relevant to the events surrounding the commission of the crime in Ochoa's case, it was not admissible, and the jury was not entitled to consider it.

[5]     Because we hold that the district court erred in concluding that evidence of the victim's blood toxicology was relevant, we need not address the State's argument that the district court further erred by concluding that the evidence was not substantially more prejudicial than probative. Even so, a trial court's weighing under I.R.E. 403 will not be overturned absent an abuse of discretion. *Enno*, 119 Idaho at 406, 807 P.2d at 624. There is no indication in the district court's intermediate appellate decision that the district court applied the correct standard of review to the magistrate court's I.R.E. 403 analysis. Rather, it appears that the district court determined that, in

**B.     Trial Continuance**

The State also argues that the district court applied an erroneous legal standard and improperly disregarded Ochoa's lack of diligence during discovery to conclude it was error to deny Ochoa's motion to continue made on the first day of trial.[6] The State contends that the magistrate court properly denied Ochoa's motion to continue the trial because her lack of diligence during discovery created the circumstances that she claimed necessitated a continuance and she failed to show that the lack of a continuance prejudiced her. We hold that the district court erred in concluding that the magistrate court abused its discretion in denying Ochoa's motion to continue because Ochoa failed to show prejudice resulting from the denial.

Granting a continuance is a discretionary decision committed to the trial court. *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995). A party attacking the denial of a motion to continue based upon the late disclosure of evidence must show that the late disclosure resulted in prejudice denying the party a fair trial. *Id.* This requires a party to show a reasonable probability that the result of the proceedings would have been different but for the late disclosure. *Id.* A bare claim that additional investigation could have occurred is insufficient to show the requisite unfair prejudice. *Id.*

Prior to jury selection on the first day of trial, Ochoa moved for a continuance, arguing that she had received the victim's toxicology report the evening prior and needed time to review the 441-page document. In support of the motion, Ochoa asserted that the toxicology report contained information of which she was previously unaware. Specifically, Ochoa asserted that the report *might* have indicated the presence of previously undisclosed controlled substances in the victim's blood. In response to questions from the magistrate court, Ochoa's counsel stated that she had seen "words referring to alcohol" and the word "cannabinoid" while skimming the toxicology

---

its own view, the probative value of the toxicology results was not substantially outweighed by the danger of unfair prejudice. This was not the appropriate appellate standard.

[6]     On intermediate appeal, Ochoa challenged the denial of a series of motions to continue in the weeks leading up to her trial. However, the district court concluded that the magistrate court committed reversible error in denying only the last motion, which Ochoa made prior to jury selection on the first day of trial.

report.[7] The magistrate court denied Ochoa's motion to continue, finding that the toxicology report, which an out-of-state laboratory created, had been outside the State's control and that Ochoa had been aware of both the presence of controlled substances in the victim's blood and the existence of the report for at least three months prior to seeking its disclosure.

On intermediate appeal, the district court concluded that the disclosure of the toxicology report the evening prior to trial necessitated a continuance. The district court reasoned that the "cumulative impact" of the toxicology report's disclosure the evening before trial, which followed the disclosure of 331 pages of the victim's medical records weeks earlier, and the "apparent complications" and "involvement of drugs in the victim's system" made the "necessity of a trial continuance obvious."

The district court's rationale supporting its conclusion that a continuance was necessary is contrary to law. Rather than identifying how either Ochoa's defense or the evidence admitted during trial might have changed absent the allegedly late disclosure of the toxicology report, the district court's analysis boils down to a subjective conclusion that Ochoa needed additional time to prepare. Stated differently, the district court concluded that Ochoa was entitled to a continuance to investigate whether the toxicology report would lead to additional information or evidence useful to Ochoa. Even on appeal to this Court, Ochoa fails to describe how the report's contents would have affected her defense or the evidence presented at trial.[8] Although Ochoa alleges that

---

[7]     As previously stated, the victim's toxicology report is absent from the record on appeal. Consequently, the report's actual contents are unclear.

[8]     At oral argument, Ochoa also made several assertions relating to what she perceived was a discovery violation arising from the timing of the disclosure of the toxicology report. Prior to trial, Ochoa argued that the State failed to disclose the victim's medical records and toxicology results pursuant to a discovery request made months earlier for the "facts and data" supporting the pathologist's opinions. The magistrate court rejected Ochoa's argument, concluding that, although Ochoa's request for the "facts and data" supporting the pathologist's opinions may have embraced certain information contained in the medical records and toxicology results, the discovery request did not compel disclosure of the records themselves. Subsequently, pursuant to a more specific discovery request, Ochoa received the medical records and toxicology report less than a month before trial. However, any alleged discovery violation is not properly before this Court because Ochoa did not raise the issue in her brief. I.A.R. 35(b)(4), (6) (requiring statement of additional issues on appeal and authority and argument in support of such issues). To the extent Ochoa claims the alleged discovery violation is relevant to the issues that are properly before the Court, we note

10

the toxicology report was lengthy, complex and contained "exculpatory information," she fails to describe how the proceedings might have been different had the report been disclosed earlier. As previously stated, bare claims of prejudice or allegations that additional investigation could have been conducted are insufficient to show prejudice arising from the denial of a motion to continue. *See Tapia*, 127 Idaho at 255, 899 P.2d at 965. Because Ochoa failed to demonstrate prejudice, the district court erred in reversing the magistrate court's denial of Ochoa's motion to continue.

## C. Medical Records Testimony

The State argues that the district court erred in concluding that testimony from the State's pathologist conveying some of the contents of the victim's medical records was inadmissible hearsay. According to the State, the testimony was admissible under I.R.E. 703 as the basis of the pathologist's opinion on the victim's cause of death and that, even if not admissible, any error in admitting the testimony was harmless. We hold that the district court erred in concluding that the admission of the challenged testimony was error.

Generally, hearsay[9] is inadmissible during trial unless a recognized hearsay exception applies. I.R.E. 802; *State v. Stanfield*, 158 Idaho 327, 341, 347 P.3d 175, 189 (2015). An expert witness, however, may testify to an opinion based upon facts or data that the expert has been "made aware of." I.R.E. 703. The facts and data forming the basis of an expert's opinion need not be admissible as long as they are of a kind that experts in the particular field would reasonably rely upon. *Id.* The proponent of an opinion may not disclose inadmissible facts and data forming the opinion's basis unless "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* In this context, the probative value of the evidence arises from its ability to explain the expert's thought processes. *See Williams v. Illinois*, 567 U.S. 50, 78 (2012) (Alito, J., Plur.) (discussing FED. R. EVID. 703 which is substantially identical to

---

that, consistent with the magistrate court's ruling, if a defendant in a criminal case wants the facts and data underlying an expert's opinion, the defendant must make a written request for such information. *See* I.C.R. 16(b)(7).

9       "Hearsay" is defined as an out-of-court statement offered "to prove the truth of the matter asserted in the statement." I.R.E. 801(c)(2).

I.R.E. 703).  The prejudicial effect, on the other hand, arises from the risk that the jury will rely on the evidence for an improper purpose (e.g., as substantive evidence against the opposing party).

To assess the admissibility of the pathologist's testimony, it is important to inventory precisely what the pathologist said on the stand about how he formulated his opinion on the victim's cause of death.  The pathologist testified that he reached his opinion on the victim's cause of death through an external examination of the victim's body and by reviewing medical reports by the physicians who treated the victim after the crash.  When the State asked why no internal examination was performed, the following exchange occurred:

[Prosecutor]:  And then, did you perform any internal examination at all?
[Pathologist]:  No.
[Prosecutor]:  Why not?
[Pathologist]:  [Treating physicians] had already done that at the hospital.
[Prosecutor]:  So is it common for you to look at hospital records when you're determining cause of death?
[Pathologist]:  Yes.
[Prosecutor]:  How often do you do that when you're doing an [external examination]?
[Pathologist]:  Whenever the case is appropriate, like in this case.
[Prosecutor]:  So in reviewing the medical records from the hospital, what did you learn about [the victim's] injuries?
[Defense]:  Objection, Your Honor, hearsay.

The prosecutor argued in response to Ochoa's hearsay objection that, under I.R.E. 703, the pathologist could testify to facts and data within the medical records that formed the basis of his opinion regarding the victim's cause of death.  After the jury was excused, the following exchange occurred:

[Prosecutor]:  And was it important to your conclusion in this case to look at the medical records?
[Pathologist]:  Yes.
[Prosecutor]:  And why was it important?
[Pathologist]: Because [the medical records] documented [the victim's injuries], the doctors in the hospital are the ones who are trying to save his life and document his injures.  That's absolutely the best form of information I could get.
[Prosecutor]:  But [the treating physicians] didn't determine [the victim's] cause of death?
[Pathologist]:  No.
[Prosecutor]:  You did?
[Pathologist]:  Yes.

12

[Prosecutor]: Based on the injuries that he had when he was at the hospital?
[Pathologist]: Right.

In response to questions from Ochoa's counsel, the pathologist further testified to the critical role the victim's medical records served in determining cause of death.

[Defense]: [E]ven if you did an autopsy, you wouldn't be able to tell what the injuries were initially because they've been altered?

[Pathologist]: Well, I would have--I would have seen what [the treating physicians] did and been able to get an idea. But it was obvious that [the victim] had injuries to his pelvic region. So I would have been able to see what [the treating physicians] had done. But to know exactly what was there before they started, of course I would have to review the medial records. It would be malpractice if I didn't.

[Defense]: From the internal--the external examination of [the victim], were you able to determine, just based on that external examination, what the cause of death was?

[Pathologist]: No.

[Defense]: So you were--you had to rely on those medical records.

[Pathologist]: Yes.

Ultimately, the magistrate court overruled Ochoa's hearsay objection, finding that the medical records contained facts and data regarding the victim's injuries upon which pathology experts would reasonably rely and that the information derived from the medical records would help the jury understand the victim's cause of death. The pathologist then testified before the jury, and over Ochoa's continuing hearsay objection, that the victim's medical records indicated he suffered a collapsed lung, abdominal bruising, multiple rib and pelvic fractures, and severed arteries in his pelvic region. The victim's medical records further indicated that the victim suffered uncontrolled bleeding leading to refractory hypotension.[10] According to the pathologist's testimony, death is the inevitable result of this condition. The pathologist then testified to his opinion that the victim died from blunt-force trauma suffered in a motorcycle accident.

On intermediate appeal, the district court concluded that allowing the pathologist to testify to the contents of the victim's medical records was error. The district court reasoned that the pathologist had not formulated his own opinion regarding the specific medical condition that

---

[10]    The pathologist testified that "refractory hypotension" occurs when the body can no longer maintain adequate circulation due to blood loss.

13

caused the victim's death but, instead, merely accepted the factual findings contained in medical reports describing the victim's physical condition. Then, based upon its own independent medical research, the district court determined that the controlled substances in the victim's blood *could* have contributed to the victim's death.[11] Consequently, the district court concluded that testimony from a treating physician was necessary to facilitate inquiry into possible medical complications related to the victim's blood toxicology and to establish the specific medical condition that resulted in the victim's death.

The district court further concluded that the pathologist's testimony relating to the description of the victim's injuries contained in his medical reports was hearsay and not admissible under I.R.E. 703. In support of this conclusion, the district court determined that "complications in this case"[12] precluded a "balancing of the equities" that might have justified "the use of the medical records alone, as interpreted by the pathologist, as sufficient proof of medical causation of death linked to the accident." However, the district court did not conclude that the admission of the pathologist's testimony regarding the contents of the victim's medical records was, by itself, reversible error. Rather, the district court held that, when coupled with the other alleged errors discussed above, admitting the pathologist's testimony describing the victim's injuries constituted cumulative error. Although the district court conducted no harmless error analysis, the application of the cumulative error doctrine implies the conclusion that the error of admitting the pathologist's hearsay testimony was, by itself, harmless. Consequently, we will review the district court's implicit conclusion that admission of the pathologist's hearsay testimony was error (albeit harmless and ultimately considered as part of a cumulative error analysis).

---

[11] The supporting medical authorities cited by the district court were not presented to the magistrate court, were not in the briefs on intermediate appeal, and are not included in the record on appeal.

[12] The "complications" referenced by the district court relate to the victim's apparent lack of symptoms indicating a fatal injury just after the accident, the lapse of time between the accident and the victim's death, the pathologist's apparent inability to identify which of the victim's organs failed or the cause of the bleeding that resulted in the victim's death, and the presence of controlled substances in the victim's blood.

Experts may testify to opinions based upon inadmissible hearsay. I.R.E. 703. Outside the courtroom, technical experts routinely rely upon research, surveys, or experiments performed by others when providing professional services. The purpose of I.R.E. 703 is to align courtroom evidentiary practice with this reality by allowing experts to rely upon the same sources they reasonably rely on outside the courtroom when testifying. *See* FED. R. EVID. 703 Advisory Comment Notes (noting F.R.E. 703 is "designed to broaden the basis for expert opinions . . . and to bring the judicial practice into line with the practice of the experts themselves when not in court"); *see also Doty v. Bishara*, 123 Idaho 329, 336, 848 P.2d 387, 394 (1992) (holding there was no error in the admission of expert testimony that was based, in part, on hearsay from the notes of another expert, which informed the testifying expert's own independent opinion and was foundational evidence typically relied on by experts in his field in forming their opinions). Although the pathologist's opinion relies upon observations about the victim's internal injuries made by other medical professionals, nothing in the record suggests that the pathologist was a conduit for another individual's opinion that the victim died *as a result of the accident*. To the contrary, the pathologist testified that he had specialized knowledge and training and that he used it to formulate an opinion on the victim's cause and manner of death from medical records and an external examination of the victim's body. Idaho Rule of Evidence 703 authorized the pathologist to formulate his opinion in this manner. The pathologist's formulation of this opinion, without personally observing the victim's injuries, affects the weight assigned to the testimony and not its admissibility. *See Upjohn Co. v. Rachelle Labs., Inc.*, 661 F.2d 1105, 1112 (6th Cir. 1981) (affirming admission of testimony that was based on data reasonably relied upon by experts in the field in forming opinion offered and noting that any weaknesses in factual basis of opinion went to weight, not admissibility). Consequently, the district court erred in concluding that the pathologist's testimony regarding his opinion about the victim's cause of death was inadmissible without foundation testimony from a treating physician. Having concluded that the pathologist could testify to his opinion regarding the victim's cause of death such that the magistrate court did not err in admitting the evidence, we need not consider the district court's conclusions regarding harmless or cumulative error vis-à-vis this testimony.

15

## IV.

## CONCLUSION

The district court erred in concluding that the magistrate court abused its discretion in excluding the victim's toxicology results, denying Ochoa's motion for a continuance, and overruling Ochoa's hearsay objection to the coroner's testimony about the information in the victim's medical records upon which the coroner relied. Consequently, the district court erred by vacating Ochoa's judgment of conviction for misdemeanor vehicular manslaughter. Accordingly, the district court's decision, on intermediate appeal from the magistrate court, vacating Ochoa's judgment of conviction for misdemeanor vehicular manslaughter and remanding for a new trial is reversed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.