# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 51649

|  |  |  |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Boise, February 2026 Term |
| | ) | |
| v. | ) | Opinion filed: May 12, 2026 |
| | ) | |
| TIMOTHY JON GUTIERREZ, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. John T. Mitchell, District Judge.

The judgment of the district court is <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender, Boise, for Appellant. Kierra W. Mai argued.

Raúl R. Labrador, Idaho Attorney General, Boise, for Respondent. T. Michael MacEagan argued.

_____

BEVAN, Chief Justice.

This appeal concerns the district court's denial of an oral motion to continue a sentencing hearing and its imposition of a fixed life sentence on the defendant. In exchange for the dismissal of six counts, Timothy Jon Gutierrez pleaded guilty to one count of lewd conduct, two counts of possession of sexually exploitative material, and one count of injury to a child. At the sentencing hearing, Gutierrez asked to continue the hearing until the psychosexual evaluation and polygraph examination were completed and submitted to the court for consideration. Ruling from the bench, the district court denied the continuance. The court then sentenced Gutierrez to a fixed life sentence for Lewd Conduct with a Minor Under Sixteen, as well as three fixed, ten-year sentences for the remaining counts, with each sentence running concurrently with the others. For the reasons explained below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The victim in the underlying criminal case is Gutierrez's daughter. She was 13 years old when a school counselor first approached her with concerns about inappropriate relations between

1

her and Gutierrez based on an anonymous report. Three months later, in December 2022, a parent of one of daughter's classmates contacted her school when he saw a text message on his son's phone that claimed Gutierrez was having sex with daughter. Based on the text message, a caseworker from the Idaho Department of Health and Welfare ("IDHW") and a detective from the Rathdrum Police Department ("RPD") interviewed daughter. She did not confirm abuse by Gutierrez but "had a visible reaction" when asked if Gutierrez was "hurting her." During a home visit on March 3, 2023, a detective secured confirmation from daughter's grandfather's girlfriend that daughter and Gutierrez were sleeping in the same bed. The girlfriend also explained that she believed Gutierrez was selling drugs out of the home and that she found pills, spermicide, and a pregnancy test in his room. Daughter told the officer that Gutierrez smoked "blue pills" in front of her.

On February 28, 2023, a few days before the home visit, Gutierrez was arrested during a traffic stop for possession of a controlled substance with intent to deliver and possession of a controlled substance. He admitted the pills in his possession were fentanyl. At the time, Gutierrez was on felony probation for two cases in which he had been convicted of (1) felony attempt to flee/elude police in 2019 and (2) possession of a controlled substance in 2022. During a search of Gutierrez's cell phone, police found images of suspected child sexual abuse material ("CSAM"). After securing a warrant to complete a data extraction of the phone, police located 27 images of prepubescent CSAM. Police also recovered a text message exchange between Gutierrez and daughter, in which Gutierrez asked if daughter had "talk[ed] to him about the thing we discussed?" Daughter responded, "[a]bout the sex thing no." Gutierrez's phone also recorded the following words had been typed into his phone: "daughtersex," "daddaughterincest," "incest," "youngincest," "2yo," and "DadDaug."

On March 6, 2023, the Children's Advocacy Center conducted a forensic interview with daughter. She made several statements during the interview: (1) Gutierrez manipulated her into having sex with him by claiming it was involuntary; (2) she told Gutierrez to stop; (3) Gutierrez had sex with her "every night or every other night"; (4) Gutierrez bribed her and claimed he would be killed in prison if she told anyone about the situation; and (5) that Gutierrez used spermicide and took her to the doctor to get a prescription for birth control. She later clarified Gutierrez began raping her in September 2021 when she was 11 years old. Police also confirmed that the body markings on a child in one of the CSAM photos on Gutierrez's phone matched the markings on

2

daughter. Police secured a search warrant for Gutierrez's room and found spermicide, soiled female underwear, birth control pills, and a pregnancy test. Based on the information disclosed by daughter in the interview, Gutierrez was 34 years old when he began sexually abusing daughter.

The State charged Gutierrez by information with six counts of Sexual Exploitation of a Child by Possession of Sexually Exploitative Material, a felony under Idaho Code section 18-1507(2)(a), one count of Sexual Exploitation of a Child, a felony under Idaho Code section 18-1507(2)(b), one count of Lewd Conduct with a Minor Under Sixteen, a felony under Idaho Code section 18-1508, one count of Incest, a felony under Idaho Code section 18-6602, one count of Injury to a Child, a felony under Idaho Code section 18-1501(1), and one count of Sexual Abuse of a Child, a felony under Idaho Code section 19-2514. Part II of the information sought to impose the persistent violator enhancement based on three previous felony convictions.

Gutierrez accepted a pretrial settlement offer in which he agreed to plead guilty to one count of Lewd Conduct, two counts of Possession of Sexually Exploitative Material, and one count of Injury to a Child. He also agreed to admit to two probation violations from two prior cases. Upon Gutierrez's plea, the State agreed to dismiss four counts of Sexual Exploitation of a Child by Possession of Sexually Exploitative Material, one count of Incest, and one count of Sexual Abuse of a Child. The State also dismissed the persistent violator enhancement and agreed to recommend concurrent sentences.

Upon accepting Gutierrez's guilty pleas on November 8, 2023, the defense requested a presentence investigation report ("PSI"), a psychosexual evaluation ("PSE"), a polygraph, and a mental health evaluation. The district court ordered all three, noting that "[i]t will be up to the defense to schedule all that, organize all that." Gutierrez's counsel then stated:

> I don't know if we will be able to get the psychosexual and the mental health done in that time. We can certainly keep that date. I'd just make that record. *I'll contact the office as soon as we can and see where dates are.* At least with Dr. Wyatt those generally have been out quite a ways.

(Emphasis added). The district court then commented, "[w]e can always reschedule."

The sentencing hearing occurred on January 30, 2024, as scheduled. At the time of sentencing, confidential exhibits, including the full PSI and associated attachments, were provided to the court. The PSI was 97 pages in length including attachments. It was also amended with additional documents that are included in the "confidential exhibit" folder in the record. The total length of all these documents was 206 pages. These documents were available to the district court

and to both parties. In addition, Gutierrez scored a 31 on the LSI-R, a measure placing him in the "high" risk category to recidivate. The court was also given a four-page letter from Gutierrez, which the court reviewed before the sentencing hearing formally began. The PSE and polygraph had not been completed at the time of sentencing.

Gutierrez's counsel sought to delay sentencing until the PSE and polygraph were completed, but in doing so he admitted that the PSE was not complete "in large part due to [an] oversight of my office of scheduling the PSE." Before hearing sentence recommendations from the parties, the district court stated, "because we've set aside an hour for this sentencing hearing, I am not going to waste that hour . . . you can make a pitch as to why I should continue this hearing in order that the [PSE] be obtained." The district court further explained that it was not inclined to delay sentencing to obtain the PSE because it did not see this case as being one where Gutierrez would receive probation:

> I'm not inclined to grant a motion to continue the hearing or continue the end of the hearing or take this under advisement until I receive the evaluation. . . . I guess to be blunt, I'm not viewing this, based on what I've seen so far and read so far, I'm not seeing this as a probation case, and I think the [PSE] would be very relevant to a decision by the court as to probation but . . . I don't think it is going to be relevant to this court.

The State then recommended fixed terms of ten years for the felony injury to a child conviction and for each of the two counts of sexual exploitation of a child by possession of sexually exploitative material. It further recommended a fixed life sentence for the lewd conduct conviction, with all sentences to run concurrently. Defense counsel did not contest the State's recommendation of the ten-year fixed terms, but it recommended that the district court "consider a fifteen-year fixed sentence with perhaps even an indeterminate life sentence[ ]" for the lewd conduct conviction. Counsel emphasized that "[t]he missing piece is ultimately the treatment component of what I believe could be further discovered through evaluations such as a [PSE] and full-disclosure poly[graph]." Gutierrez was also afforded his right to allocution before sentence was pronounced.

The district court imposed a ten-year fixed sentence for each count of Possession of Sexually Exploitative Material and the one count of Injury to a Child. It also imposed a fixed life sentence for the one count of Lewd Conduct with a Minor Under Sixteen. It noted that it ordered the PSE and polygraph almost three months earlier and that it was within the court's discretion to order those examinations under Idaho Code section 18-8316. The court declared, "I am specifically

4

finding there's no mandate that I actually receive those orders before I make a sentencing decision."

The district court then explained its decision in greater detail, including reference to the sentencing factors from *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).[1] Considering the rehabilitation factor, it explained, "if the report from . . . Calderwood and Wyatt says you can [be rehabilitated], then I can look at it as part of a Rule 35 and use my discretion and tell you whether or not I think that's an accurate assessment." The defense argued that Gutierrez had never specifically received "sexual offender treatment," which could indicate he might be amenable to treatment. In response to that point, the court said, "[t]hat's on [Gutierrez] too . . . [Gutierrez] can always ask for help. Talk to your probation officer."

The district court further elaborated that based on Gutierrez's prior conduct, including suicide attempts, manipulation, and drug offenses, "[t]here's absolutely no reason to believe that you will change no matter what kind of help is put in your direction." Evidence of the "manipulation" included transcripts in the PSI of messages from Gutierrez that were sent using "viapath command."[2] RPD posed as daughter and exchanged messages with Gutierrez while he was in jail. Gutierrez, believing he was messaging daughter, told her (RPD) to "get to planned parenthood asap. . . just don't tell them u are from id. . . Its time for u to figure this out OK!!. . . don't say anything on here either, you only have a short time to get this done so get on it. I love you sooooooo much." (Capitalization and spelling in original). Gutierrez also told RPD, acting as his daughter, "PLEASE PLEASE don't do anything stupid while I'm in here." Gutierrez also texted the RPD as his daughter that the "cps people are not your friends and will use whatever you tell them against us so don't tell them anything else negative that could potentially get you or I in trouble." The district court concluded that there was "no hope from a rehabilitative standpoint."

Considering the punishment factor, the district court stated, "this crime is about as disgusting and as sick and as depraved as I've ever seen, and if punishment's related to damage . . .

---

[1] This Court "has articulated four objectives of criminal punishment: (1) protection of society, (2) deterrence of the individual and the public generally, (3) possibility of rehabilitation, and (4) punishment or retribution for wrongdoing. Moreover, it is clear, as a matter of policy in Idaho, that the primary consideration is 'the good order and protection of society.' All other factors must be subservient to that end." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982) (quoting *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956)).

[2] Viapath command is a cloud-based platform that some state jail facilities use. The Kootenai County Jail used its function as a digital messaging service, which allows inmates to communicate with persons outside of the facility. These communications can be recorded and viewed by facility personnel.

you have ruined your child's life." It concluded that "retribution I think would not be met if it was anything less than a fixed life sentence." Regarding deterrence, the district court found that other offenders would be deterred knowing that committing severe offenses while on probation would result in lifelong prison sentences. Finally, regarding protection of the public, the court explained that it felt that the only way to protect the public was to keep Gutierrez in prison for life. Gutierrez never filed a Rule 35 motion.

## II.     ISSUES ON APPEAL

1. Whether the district court abused its discretion when it denied Gutierrez's motion to continue the sentencing hearing until the PSE and polygraph examination were completed.

2. Whether the district court abused its discretion when it imposed a fixed life sentence on Gutierrez for lewd conduct with a minor under sixteen.

## III.     STANDARDS OF REVIEW

"The decision to grant or deny a continuance rests within the sound discretion of the trial court." *State v. Daly*, 161 Idaho 925, 927, 393 P.3d 585, 587 (2017) (citing *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995)). "The length of a sentence is reviewed under an abuse of discretion standard considering the defendant's entire sentence." *State v. Al Muthafar*, 174 Idaho 882, 893, 560 P.3d 1029, 1040 (2024). "We review an alleged abuse of discretion by determining whether the trial court '(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.'" *Id.* (citation omitted).

"[W]hen reviewing these questions, '[i]t is important that a reviewing court evaluate the trial court's decision from its perspective when it had to rule' rather than 'indulge in review by hindsight.' " *Gilbert v. Radnovich*, 171 Idaho 566, 573, 524 P.3d 397, 404 (2023) (quoting *United States v. Tsarnaev*, 595 U.S. 302, 321 (2022)) (citation omitted). "Trial judges are imminently more '[f]amiliar with the issues and litigants' than are those of us sitting in an appellate capacity." *Gilbert*, 171 Idaho at 573 (quoting *Sun Valley Shopping Cntr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991)) (citation omitted). "'This Court will not attempt to substitute its judgment and discretion for that of the trial court, except in cases where the record reflects a clear abuse of discretion.'" *Nelson v. Nelson*, 144 Idaho 710, 717, 170 P.3d 375, 382 (2007) (quoting *Brownson v. Allen,* 134 Idaho 60, 63, 995 P.2d 830, 833 (2000) (emphasis added)

(alteration in original). "Each case requires this Court to determine whether the magistrate abused his or her discretion, not whether this Court would have made the same decision." *Id.*

## IV.   ANALYSIS

**A.   The district court did not abuse its discretion in denying the motion to continue.**

>   *1.   The district court acted consistently with the legal standards applicable at sentencing and reached its decision by the exercise of reason.*

Gutierrez claims that the district court failed to act consistently with legal standards when it denied his motion to continue the sentencing hearing because it failed to consider "potentially mitigating evidence from the PSE and polygraph." He asks that the sentence be vacated and that this Court remand the matter for resentencing "before a different judge." Gutierrez argues that under *State v. Gain*, the district court denied him "due process" by failing to afford him "'a full opportunity to present favorable evidence'" at sentencing. 140 Idaho 170, 174, 90 P.3d 920, 924 (Ct. App. 2004) (citing *State v. Morgan*, 109 Idaho 1040, 1043, 712 P.2d 741, 744 (Ct. App. 1985)). In response, the State emphasizes that: (1) the PSE had not even been scheduled at the time of the hearing due to defense counsel's oversight; (2) the record does not show that either evaluation was scheduled at the time of the sentencing hearing, or that the polygraph was ever conducted, summarized in a report or filed with the court; (3) caselaw permits a court to consider the reason for a party's delay when evaluating a motion to continue; and (4) nothing prevents a court from considering the efficient use of judicial resources when deciding whether to grant a continuance.

*Gain* addresses a defendant's due process right to present favorable evidence in a prosecution for lewd conduct. 140 Idaho at 174, 90 P.3d at 924. Citing *State v. Morgan*, 109 Idaho 1040, 1043, 712 P.2d 741, 744 (Ct. App. 1985), the Court of Appeals set forth "three fundamental safeguards" that are required "[i]n order to minimize the likelihood of [a] due process violation[]" in cases like this one:

>   (1) the defendant must be afforded a full opportunity to present favorable evidence;
>   (2) the defendant must be given a reasonable opportunity to examine all materials contained in the presentence report; and (3) the defendant must be afforded a full opportunity to explain and rebut adverse evidence.

*Id.* at 174-175, 90 P.3d at 924-925. *See also State v. Moore*, 93 Idaho 14, 17, 454 P.2d 51, 54 (1969); *State v. Grady*, 89 Idaho 204, 213, 404 P.2d 347, 352 (1965) (recognizing that a defendant

7

must be afforded a full opportunity to present evidence in mitigation or bearing on rehabilitation at sentencing); *State v. Ellis*, 70 Idaho 417, 421, 219 P.2d 953, 955 (1950).

These decisions cannot reasonably be read to guarantee a defendant a continuance to pursue potentially favorable evidence. *Cf. Gain*, 140 Idaho at 175, 90 P.3d at 925 (holding the defendant was not entitled to an additional PSE before sentencing because the record "[did] not suggest that an additional evaluation would have reached a different result."). Indeed, *Gain* itself demonstrates that a sentencing court acts within its discretion in denying a continuance even when a defendant seeks additional, potentially favorable evidence. *Id.*

Courts in neighboring jurisdictions have addressed similar issues when reviewing the denial of continuances to obtain psychosexual evaluations at sentencing. Although these decisions are not binding on this Court, they illustrate how courts have balanced these competing interests. For example, in an appeal analogous to Gutierrez's situation, the Supreme Court of Wyoming affirmed a district court's denial of a continuance at sentencing, despite the lack of a PSE. *Hirsch v. State*, 135 P.3d 586, 596 (Wyo. 2006). There, the district court proceeded to sentencing without the PSE it had previously ordered, despite the defendant requesting a continuance for the PSE at the hearing. *Id.* The Wyoming Supreme Court noted that the defendant had waited until the sentencing hearing to request a continuance based on his inability to pay the evaluators, who had already conducted the evaluation. *Id.* at 597. The Wyoming Supreme Court also rejected Hirsh's claim that there was a "significant probability" the PSE would show a low risk for reoffending, concluding that assertion was merely "an inference he derive[d] from his interpretation of selected facts in the record." *Id.* Ultimately, the court concluded that "the views of both parties as to what a [PSE] would reveal are simply speculation." *Id.* Like Idaho, Wyoming's statutory and procedural framework makes the ordering of PSEs discretionary. *Id.* at 596; s*ee* I.C. § 18-8316; I.C.R. 32(d).

Alternatively, in *State v. Webber*, the Montana Supreme Court held that a district court abused its discretion in denying a continuance at sentencing under circumstances not present here. 448 P.3d 1091, 1092–95 (Mont. 2019). There, the sentencing court denied the motion without analysis, declared an updated PSE "not valid" without explanation, made disparaging remarks about the evaluator, mischaracterized the evaluator's conclusions, and arbitrarily asserted that the court could not accommodate a necessary witness' schedule despite the record indicating otherwise. *Id.* at 1092–95. None of those circumstances were present at Gutierrez's sentencing hearing.

8

These two cases illustrate a range of circumstances in which appellate courts have reviewed the denial of continuances to obtain PSEs at sentencing. Gutierrez's case presents none of the extraordinary circumstances present in *Webber* and is more like *Hirsch*.

With these considerations in mind, we turn to the district court's decision here. A sentencing court must exercise its discretion to balance a defendant's right to present favorable evidence against the practical realities of delay, while also determining whether the evidence sought is likely to be favorable or merely academic.

Gutierrez attempts to distinguish *Gain* by noting that the defendant there had already completed and submitted a PSE to the court and sought only to supplement it. *Id.* at 174, 90 P.3d at 924. By contrast, Gutierrez sought a continuance to obtain a PSE in the first instance. That distinction does not alter the analysis here. While PSEs are commonly ordered in sexual offense cases, neither Idaho law nor the Idaho Criminal Rules guarantee a defendant the opportunity to obtain one. Rather, whether to order such an evaluation rests within the district court's discretion. *See* I.C. § 18-8316 ("*If* ordered by the court, an offender convicted of any offense . . . *may* submit to an evaluation . . . . ") (emphasis added);[3] s*ee also* I.C.R. 32(d) ("[T]he decision as to whether to order a psychological evaluation is to be made by the sentencing judge.").

Gutierrez also argues that the district court improperly considered factors such as counsel's delay and the efficient use of judicial resources when denying his motion to continue. That argument finds no support in our precedent. Prior decisions recognize that district courts act within the bounds of their discretion when denying motions to continue based on considerations relevant to this appeal such as case management, attorney conduct, and the responsible use of judicial resources.

For example, we have held that, at trial, "the bare claim that additional investigation could have been conducted is not sufficient to demonstrate unfair prejudice so as to support a motion for a continuance." *State v. Tapia*, 127 Idaho 249, 255, 899 P.2d 959, 965 (1995) (citing *State v. Spradlin*, 119 Idaho 1030, 1034, 812 P.2d 744, 748 (Ct. App. 1991)). Likewise, in the civil context, we upheld a district court's denial of a continuance where the requesting pro se party delayed obtaining counsel despite months of advance notice, the trial had already been postponed, granting a continuance would have delayed trial for an additional six months, and the requesting party

---

[3] In 2011, section 18-8316 was amended to change "an offender . . . *shall* submit. . . ." to "an offender . . . *may* submit . . . ." S.B. No. 1154, 61st Leg., 1st Reg. Sess. (Idaho 2011) (emphasis added).

wanted a continuance to "start over" and "rebuild the case." *Everhart v. Washington Cnty. Road and Bridge Dep't*, 130 Idaho 273, 275–76, 939 P.2d 849, 851–52 (1997). *Everhart* demonstrates that the trial court may consider both the litigant's (or counsel's) responsibility for the delay and the impact on the court's schedule when evaluating a motion for a continuance.

Similarly, we have affirmed the denial of a continuance where the defendant had ample time to obtain evidence but failed to do so. *State v. Ward*, 98 Idaho 571, 574, 569 P.2d 916, 919 (1977) (noting that "defense counsel had more than seven months within which to request the evidence in order to run the tests which were allegedly essential to defendant's case."). The Idaho Court of Appeals has applied the same reasoning, concluding that a trial court did not err in denying a continuance where the defendant waited until shortly before trial to raise an issue and relied primarily on an unsubstantiated claim of unfair surprise. *See State v. Griffith*, 144 Idaho 356, 361, 161 P.3d 675, 680 (Ct. App. 2007); *see also State v. Dopp*, 129 Idaho 597, 610, 930 P.2d 1039, 1052 (Ct. App. 1996).

*Dopp* draws a close comparison to this appeal. Although the sentencing hearing in that case had already been continued once to allow counsel "additional time to prepare," counsel did not subpoena witnesses to obtain the information he sought and offered no explanation for his failure to do so. *Id.* The district court observed that "'it hasn't been shown to me that there are people or evidence out there that is [sic] critical to the issues on this sentencing; or, even if there were, that there has been any impossibility on the part of the defendant to get that information.'" *Id.*

The same concerns are present here. Gutierrez's counsel made no showing in the record that the requested evaluations had been scheduled or that any efforts had been made to secure them. Instead, counsel waited until the day of sentencing, acknowledged the evaluations had not been scheduled due to his office's "oversight," and provided no information regarding the polygraph beyond stating that it was scheduled for the following week.

A related, though distinct principle provides additional context. The Idaho Court of Appeals, citing United States Supreme Court precedent, has explained that the Compulsory Process Clause, which guarantees the right of a defendant to call witnesses in his defense, is "entirely dependant [sic] on the defendant's initiative: '[t]he very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct.'" *State v. Harshbarger*, 139 Idaho 287, 291, 77 P.3d 976, 980 (Ct. App. 2003) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). Even though compulsory process protects "the right to present a

10

defense, [and] the right to present the defendant's version of the facts" at trial, *State v. Dalrymple*, 144 Idaho 628, 634–35, 167 P.3d 765, 771–72 (2007) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)), "a mere deprivation of testimony does not establish a Sixth Amendment violation." *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). This limitation is consistent with the "fundamental safeguard" recognized in *Gain* that a defendant be afforded a full opportunity to present favorable evidence at sentencing. *See Gain*, 140 Idaho at 174, 90 P.3d at 924. In *Harshbarger*, although the Idaho Court of Appeals held that counsel failed to preserve the issue for appeal, it implied that the district court acted within its discretion in refusing to grant a continuance to secure a witness where the defense could not "make any showing as to when, if ever, [the witness] would be available to testify." *Harshbarger*, 139 Idaho at 291–92, 77 P.3d at 980–81.

The same principle applies here. Counsel provided little justification for the request to continue the sentencing hearing in order to secure the PSE and polygraph examinations. Counsel articulated a facially plausible reason for seeking the continuance, namely, to obtain information potentially bearing on Gutierrez's amenability to sexual offender treatment. But if that rationale alone were sufficient to establish an abuse of discretion, the due process right to "a full opportunity to present favorable evidence" would have no practical limits. *Cf. Gain*, 140 Idaho at 174, 90 P.3d at 924.

The record instead reflects a lack of "deliberate planning and affirmative conduct" contemplated in *Harshbarger*. Counsel acknowledged that the PSE had not been scheduled "due to oversight of my office of scheduling the PSE." Although counsel stated that the polygraph examination was scheduled for the week after the sentencing hearing, the record contains no confirmation of a specific date. The district court ordered the examinations on November 8, 2023, and the sentencing hearing occurred eighty-three days later. During that period, the record contains no indication that counsel contacted the court to report a difficulty scheduling the examinations or to request additional time. This absence of effort is notable given counsel's statement at the change of plea hearing on November 8, 2023, that completing the testing within the available timeframe might be difficult.

Under these circumstances, the district court was within the bounds of its discretion in concluding that counsel's lack of action and planning did not warrant further delay, particularly in light of the egregious facts of this case. As discussed below, after reviewing hundreds of pages of

11

information from the PSI—including an assessment that Gutierrez presented a "high" risk to reoffend—and considering the severity and repeated abuse of his daughter, the district court expressly stated it would not grant probation or pursue rehabilitation, regardless of the results of a PSE. Gutierrez's counsel likewise acknowledged this was not a probation case, stipulating to a minimum of ten years imprisonment on certain convictions. Against this backdrop, and in this unique case, we cannot conclude that the district court abused its discretion.

Accordingly, the district court acted consistently with governing legal standards and within the bounds of its discretion in denying Gutierrez's motion to continue the sentencing hearing. On this record the court's decision reflects the exercise of reason and therefore does not constitute an abuse of discretion.

2.      *The district court's denial of Gutierrez's motion to continue was not arbitrary.*

Gutierrez also contends that the denial of his motion to continue was arbitrary. He relies on the district court's imposition of a fixed life sentence, emphasizing caselaw describing a fixed life term as a sentence that "'require[es] a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released.'" *State v. Windom*, 150 Idaho 873, 878, 253 P.3d 310, 315 (2011) (quoting *State v. Jackson*, 130 Idaho 293, 294–95, 939 P.2d 1372, 1373–74 (1997)). He notes the State did not object to his motion, the district court's statement that it didn't want to "waste that hour," and the court's reliance on Idaho Code section 18-8316 in finding it was not required to wait on the examinations.

As explained above, the district court's consideration of judicial time and resources is not improper under our precedents. Further, the district court explained its reasoning in great length as to why the fixed life sentence was appropriate based on Gutierrez's conduct. The court stated, "I need to explain to you why this is my decision, and I'm probably going to take a little bit of time doing that." It explained it would be "letting down [its] duty to protect the public if [it] were to do anything but impose a fixed life sentence." The court described "comb[ing] through" Gutierrez's prior cases in 2019 and 2022 when he was sentenced to probation, before he engaged in lewd conduct with his daughter for almost two years, to make sure it "hadn't miss[ed] something from a sex offense." The court considered Gutierrez's lewd conduct offense in 2004 when he was a juvenile, letters from his sisters alleging he had sexually abused them, and his drug trafficking offense and the sentence imposed by another judge in 2015. The court concluded, "I'm really,

12

really comfortable and at peace with sending you on a fixed life sentence. I really truly don't know what else can be done." These statements all preceded the district court's factor-by-factor explanation under *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Based on this record, the district court's reasoned analysis shows that the court possessed "a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released." *Windom*, 150 Idaho at 878, 253 P.3d at 315.

The district court's concern with public safety also reflects a sentence that was not the product of arbitrariness or a lack of clarity. "[I]t is clear, as a matter of policy in Idaho, that the primary consideration is 'the good order and protection of society.' All other factors must be subservient to that end." *State v. Dobbs*, 166 Idaho 202, 204, 457 P.3d 854, 856 (2020) (quoting *Toohill*, 103 Idaho at 568, 650 P.2d at 710). The PSI concluded that Gutierrez "has demonstrated a pattern of victimizing young innocent girls and placing the community members at risk." His pattern of drug use and driving offenses, which the court described in explaining the sentence, also demonstrated a risk to his presence in the community.

Gutierrez's citation of Idaho Code section 18-8316 is not accompanied by any substantive argument explaining why the district court's reliance on the statute was arbitrary. As explained earlier, that statute, titled "Requirement for psychosexual evaluations upon conviction," describes the circumstances under which a judge *may* order a PSE for sentencing purposes. I.C. § 18-8316. Its provisions apply only *if* the court orders such an evaluation, and even then the offender may opt out. *Id.* (the offender "*may* submit to an evaluation.") (emphasis added). Thus, the absence of a completed PSE—regardless of its cause—does not render the district court's decision inconsistent with Idaho Code section 18-8316.

The district court's explanation for imposing a fixed life sentence demonstrates a decision reached by reasoned judgment. The sentence falls within the range authorized by Idaho Code section 18-1508. *See State v. Loranger*, ___ Idaho ___, 579 P.3d 910, 913 (2025) (citation omitted). In reaching its decision, the district court considered Gutierrez's instant offenses, his prior conduct, and the *Toohill* sentencing factors, emphasizing the paramount concern in sentencing—the protection of society. *See State v. Gibbs*, 162 Idaho 782, 787, 405 P.3d 567, 572 (2017) ("The district court's decision was based upon reason, as it reflected the district court's view that it was appropriate for the protection of society.").

13

The district court also complied with Idaho Criminal Rules 33(a)(1) and 32(g)(1)(A) by inviting Gutierrez to make a statement or present other information in mitigation and by allowing Gutierrez and his counsel to contest the contents of the PSI. Gutierez declined to make any corrections to the PSI at the hearing. Therefore, the record of the sentencing hearing reflects that the district court exercised reasoned judgment, not the arbitrary decision-making Gutierrez alleges.

The dissent takes issue with the district court's decision not to continue the sentencing hearing to obtain a PSE that had not been scheduled. As discussed below, we agree that PSEs are routinely provided to courts before sentencing in sex offense cases. However, as we have explained, no authority guarantees a defendant the right to present a PSE at sentencing. We have identified no statute, rule, or constitutional provision requiring the district court to continue the hearing, and the dissent identifies none.

Because no such entitlement exists, Gutierrez must demonstrate that the district court abused its discretion. We have recognized that a fixed life sentence "should not be imposed lightly," with the primary consideration being the protection of society. *See State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997); *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988). As *Jackson* further explains, a fixed life sentence may be reasonable where the offense is so egregious that it warrants an exceptionally severe measure of retribution and deterrence. 130 Idaho at 294, 939 P.2d at 1373. The dissent agrees that the record reflects egregious conduct. The record also contains the district court's detailed explanation for imposing a fixed life sentence, including its assessment of Gutierrez's conduct and limited prospects for rehabilitation. Although the dissent characterizes the district court's reasoning as reflecting "moral outrage," it does not demonstrate how the court abused its discretion under the applicable framework.

We do not endorse the use of improper considerations at sentencing. However, we do not believe the district court relied on improper considerations here. Applying the governing standards, we conclude that the district court's imposition of a fixed life sentence was within the bounds of its discretion and consistent with precedent. The record reflects that, notwithstanding the severity of his offenses, Gutierrez was afforded the procedural protections guaranteed to defendants in Idaho's courts.

3. *The district court's suggestion that Gutierrez could later submit the PSE and polygraph in a Rule 35 motion was not arbitrary.*

Gutierrez also argues that the district court's suggestion to present the results of a PSE and polygraph examination in an Idaho Criminal Rule 35 motion to correct or reduce a sentence was

14

arbitrary by inviting Gutierrez to file a Rule 35 motion later. Gutierrez correctly notes that a Rule 35 motion differs in both purpose and procedure from a sentencing hearing. He characterizes the district court's reference to Rule 35 as effectively postponing consideration of both the PSE and polygraph examination to a different and more difficult procedural framework rather than permitting him to present that information at the sentencing hearing.

"Rule 35 does not function as an appeal of a sentence. Instead, it is a narrow rule allowing a trial court to correct an illegal sentence (at any time) or to correct a sentence imposed in an illegal manner." *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). "If a sentence is within the statutory limits, a motion for reduction of sentence under Rule 35 is a plea for leniency." *Id.* (citing *State v. Knighton*, 143 Idaho 318, 318, 144 P.3d 23, 24 (2006)). "[T]he defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the Rule 35 motion." *Id.* (citing *Knighton*, 143 Idaho at 320, 144 P.3d at 25).

Had the district court stated or implied that presenting the findings of the PSE in a Rule 35 motion would provide the same level of consideration by the court as at sentencing, that could present an abuse of discretion by misstating the governing standards for a Rule 35 motion. Similarly, if Gutierrez had filed a Rule 35 motion supported by the examinations and the district court refused to even consider the new information, such a ruling could be an abuse of discretion. That did not occur here. The district court offered no guarantees or assurances to Gutierrez when it referenced Rule 35. Immediately after stating it could "look at the [reports] as part of a Rule 35," the court added, "I can't imagine any sex offense evaluation convincing me that you're a tolerable risk to be out in public." In light of that statement, Gutierrez cannot reasonably claim that he relied to his detriment on any promise or misleading advice from the district court. The court gave no assurance beyond what Idaho Criminal Rule 35 itself permits.

The record does not show Gutierrez ever filed a Rule 35 motion, nor does it indicate he completed a PSE or a polygraph examination. The failure to pursue these avenues cannot be attributed to the district court. Nearly three months before sentencing the court ordered that a PSE and polygraph examination be completed and ordered the State to provide the necessary funding.

15

On this record, the district court's reference to the possibility of a Rule 35 motion—simply noting an additional procedural avenue counsel might pursue—does not constitute an abuse of discretion.

**B.      The district court did not abuse its discretion when it imposed a fixed life sentence.**

"[A] sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court." *Loranger*, ___ Idaho at ___, 579 P.3d at 913 (quoting *State v. Chavez*, 174 Idaho 745, 759, 560 P.3d 488, 502 (2024)). "To show an abuse of discretion, the defendant must show that in light of the governing criteria, the sentence was excessive, considering any view of the facts." *Id.* (quoting *State v. McIntosh*, 160 Idaho 1, 8, 368 P.3d 621, 628 (2016)).

*1.      The district court did not fail to consider Gutierrez's rehabilitative potential.*

Gutierrez asserts that the district court abused its discretion by imposing a fixed life sentence for lewd conduct because it "failed to consider" his potential for rehabilitation. In support, he relies on two familiar principles from our sentencing cases: first, a fixed life sentence "is not appropriate in every lewd and lascivious conduct case," *State v. Jackson*, 130 Idaho 293, 295, 939 P.2d 1372, 1374 (1997); and second, that such sentences should be imposed only with "a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released." *Windom*, 150 Idaho at 878, 253 P.3d at 315. Gutierrez contends that PSEs provide valuable information to sentencing courts and that, without one, the district court could not meaningfully assess his amenability to treatment or his rehabilitative potential.

First, the logic in *Jackson* does not support Gutierrez's contention that the district court could not properly evaluate rehabilitation under *Toohill* without a PSE. As *Jackson* explained:

> A fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, *or* if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society.

*Jackson*, 130 Idaho at 294, 939 P.2d at 1373 (quoting "with approval" *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988) (emphasis added)). The disjunctive "or" is significant in this quotation. As stated, a fixed life sentence may be justified either because the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence or because the offender lacks rehabilitative potential. Thus, even assuming additional evidence might bear on Gutierrez's rehabilitative prospects, the district court could reasonably conclude that the

16

seriousness of the offense alone warranted a fixed life sentence. *See also State v. Moore*, 131 Idaho 814, 824, 965 P.2d 174, 184 (1998) ("A court's determination that the objectives of punishment, deterrence, and protection of society outweigh the goal of rehabilitation should not be overturned unless that determination is unreasonable under the facts." (citation omitted)).

Second, Gutierrez has not identified any authority establishing that a PSE is *required* to evaluate rehabilitative potential in cases involving lewd conduct with a minor. PSEs are certainly common and often useful to evaluate an offender's prospects for rehabilitation. *See, e.g.*, *State v. Campbell*, 170 Idaho 232, 245, 509 P.3d 1161, 1174 (2022) (noting a district court's review of a PSE at sentencing in which felony rape of ten minor girls was described). But Idaho law does not mandate their use. *See State v. Burdett*, 134 Idaho 272, 274, 277–78, 1 P.3d 299, 302, 305–07 (Ct. App. 2000) (upholding a fixed life sentence for second degree murder where the defendant sexually abused the victim, and no PSE was completed). As explained earlier, Idaho Code section 18-8316 contemplates a PSE may be ordered by the court. It does not say that a PSE is required before sentencing an offender convicted of sexual offenses.

Notwithstanding these conclusions, a district court may abuse its discretion by imposing a fixed life sentence if it fails to consider one of the *Toohill* objectives. *See State v. Dobbs*, 166 Idaho 202, 204, 457 P.3d 854, 856 (2019) (citing *State v. Bailey*, 161 Idaho 887, 895, 392 P.3d 1128, 1236 (2017)) (explaining that a reasonable sentence is one that appears to achieve the objectives of criminal punishment identified in *Toohill*). At the same time, "[t]he district court has the discretion to weigh these objectives and to give them the weight deemed appropriate." *Id.* (quoting *Bailey*, 161 Idaho at 895, 392 P.3d at 1236).

The sentencing transcript demonstrates that the district court did consider Gutierrez's potential for rehabilitation, even in the absence of a PSE. Addressing the *Toohill* factor of rehabilitation, the court stated:

> Rehabilitation. I don't think you can be rehabilitated . . . I can't imagine any sex offense evaluation convincing me that you're a tolerable risk to be out in public. I mean the proof's in the pudding. You've abused all your life from the time you were 17 until you went into custody 243 days ago. I mean, you're sick . . . So there's no hope from a rehabilitative standpoint. There's no way for me to satisfy that criteria under *Toohill*.

The court further explained that "[t]here's absolutely no reason to believe that you will change no matter what kind of help is put in your direction." Although a sentencing court is not required to recite the objectives of criminal punishment in precise terms, the record must show that the court

considered them. *See Dobbs*, 166 Idaho at 204, 457 P.3d at 856 (citing *State v. Wersland*, 125 Idaho 499, 503, 873 P.2d 144, 148 (1994), *abrogated on other grounds by*, *State v. Brown*, 170 Idaho 439, 448, 511 P.3d 859, 868 (2021)). The district court did so here.

The district court's assessment of Gutierrez's offenses and rehabilitative prospects is supported by the record. The PSI contained substantial information indicating that Gutierrez's potential for rehabilitation was limited. For example, the PSI reflected that Gutierrez previously participated in a drug treatment program with Dragonfly Support Services in December 2022, while he was abusing daughter. The program's "discharge summary note" stated that Gutierrez "did not put forth the effort that is necessary to stay sober," relapsed, failed to attend sessions needed to continue treatment and "was argumentative and inappropriate with the therapist." A separate staffing note from the same program similarly reported that Gutierrez was "very resistant to working on his sobriety," frequently made excuses for failing to follow through with his treatment, and "[h]e really needs to take sobriety more seriously."

A comparable appeal further supports our conclusion that the district court did not abuse its discretion in ordering a fixed life sentence. In *Dobbs*, we recently affirmed a district court's unified sentence of twenty-two years, with ten years fixed, imposed for lewd conduct and sexual abuse of a child. 166 Idaho at 203, 457 P.3d at 855. That sentence arose from a single incident in which an uncle sexually abused his fifteen-year-old niece over several hours. *Id.* at 203, 207, 457 P.3d at 855, 859.

In upholding the sentence, we approved the district court's consideration of several factors, including the profound impact on the victim and her family, the significant age disparity between the victim and Dobbs, the fact that Dobbs committed the offenses while on felony probation, and the district court's assessment that Dobbs posed a danger to society. We also noted the extended duration and physical nature of the abuse, as well as the district court's characterization of the case as "unquestionabl[y] a prison case," involving a "heinous crime which demands a prison sentence." *Id.* at 207, 457 P.3d at 859.

The similarities and differences between *Dobbs* and this appeal both support affirming Gutierrez's sentence. Like *Dobbs*, this case involves lewd conduct against a minor family member. In both cases the sentencing courts emphasized the impact of the offenses on the victims, the fact that the defendants committed the crimes while on felony probation, the defendants' danger to

society, the extreme nature of the abuse, and the conclusion that the offenses demanded a prison sentence.

The differences are equally supportive of the district court in this appeal. Dobbs received a unified sentence of twenty-two years, with ten years fixed, based on a single incident of conduct. *Dobbs*, 166 Idaho at 203, 457 P.3d at 855. The district court there also noted that Dobbs possessed "a lot of good qualities," including a strong work ethic, personal interests, "drive," and community support. *Id.* None of those mitigating qualities are supported by the record in Gutierrez's case. Moreover, Gutierrez's abuse lasted over a far longer period. The record reflects the abuse occurred from September 2021 through February 2023 and was described as occurring daily or every other day. Even assuming the lowest frequency (every other night), the misconduct involved hundreds of acts of abuse. Although the district court in *Dobbs* reviewed a PSE, that distinction does not undermine *Jackson's* recognition that an exceptionally egregious offense may itself justify a fixed life sentence.

In light of these considerations, Gutierrez has not met his burden to "prove that his sentence is excessive under any rational view of the facts." *Id.* at 206, 457 P.3d at 858. "[I]t is clear, as a matter of policy in Idaho, that the primary [sentencing] consideration is 'the good order and protection of society.' All other factors must be subservient to that end." *Id.* at 204, 457 P.3d at 856 (quoting *Toohill*, 103 Idaho at 568, 650 P.2d at 710). The district court's decision reflects a primary consideration of the protection of society and retribution for wrongdoing. Further, the district court expressly addressed rehabilitation, a PSE was not required for that assessment, and the court's description of the offenses as "disgusting," "sick," and "depraved" reflects its conclusion that the crimes were sufficiently egregious to warrant "an exceptionally severe measure of retribution and deterrence." *Jackson*, 130 Idaho at 294, 939 P.2d at 1373. On this record, the district court acted within the boundaries of its discretion, consistently with the legal standards applicable to it, and reached its decision by an exercise of reason. The fixed life sentence is not excessive.

2. *The district court did not fail to consider other mitigating factors.*

Gutierrez next argues that the district court failed to give sufficient weight to mitigating factors, particularly his "significant substance abuse issues, his acceptance of responsibility, and his strong expression of remorse." In support, he cites two cases recognizing that a sentencing court may consider substance abuse and acceptance of responsibility as mitigating factors. *See*

19

*State v. Osborn*, 102 Idaho 405, 414 n.5, 631 P.2d 187, 196 n.5 (1981); *State v. Sadler*, 103 Idaho 593, 595, 651 P.2d 527, 529 (1982).

As to his substance abuse, Gutierrez does not argue that the court prevented him from presenting evidence of his addiction or related history. Instead, he notes that he informed the district court of his "severe addiction" to fentanyl, methamphetamine, and bath salts at the time of the offenses. Gutierrez likewise emphasizes that he acknowledged the severity of his crimes and his remorse. But Gutierrez cites no authority suggesting that a sentencing court abuses its discretion merely by giving less weight to these considerations than the defendant believes they deserve. His argument ultimately rests on the assertion that the "district court should have afforded more weight to both [his] substance abuse disorder as well as his remorse for his actions."

The district court did consider Gutierrez's substance abuse history. The court stated that it had reviewed the PSI and its attachments, which included information concerning Gutierrez's behavioral and substance abuse history. As we noted above, the PSI's LSI-R assessment—which "identif[ies] a defendant's risks and needs regarding recidivism,"—rated Gutierrez as a "High" risk to reoffend.

In explaining its sentencing decision, the district court addressed Gutierrez's claimed drug impairment, stating: "[y]ou can't tell me that every day for the last year and a half that you were so messed up on fentanyl that you had no idea what it was you were doing. . . [i]t's a decision you're making to use that drug." These statements reflect that the district court considered Gutierrez's substance abuse but declined to view it as significantly mitigating. As we have explained, a sentencing court does not abuse its discretion where it "perceive[s] that it had discretion to consider the [drug abuse] as mitigation, act[s] within the outer boundaries of that discretion, and reach[es] its decision by an exercise of reason." *State v. Griffin*, 122 Idaho 733, 740, 838 P.2d 862, 869 (1992).

As to Gutierrez's argument that the court failed to afford proper weight to his statements of remorse, we have recently affirmed a district court acting within its discretion when evaluating a defendant's remorse at sentencing. *Campbell*, 170 Idaho at 245, 509 P.3d at 1174. In that case, the district court observed:

> Also disturbing is what appears to me is your demonstrated capacity to recognize that you should regret your actions and as well as the need to express regret to your victims, but the inability for you to translate that regret into stopping and to not committing new offenses continuing to victimize others.

20

*Id.* Campbell received the statutory maximum penalty on one count of battery with attempt to commit rape—a twenty-year determinate sentence—and a lesser sentence for a second count arising from the same victim. *Id.* at 237, 509 P.3d at 1166. In affirming the sentence, we noted the district court considered victim statements at sentencing, including statements relating to dismissed charges in the plea agreement and to uncharged offenses. *Id.* at 237, 245, 509 P.3d at 1166, 1174.

Similarly here, the district court sentenced Gutierrez to the statutory maximum sentence after considering Gutierrez's statements of remorse alongside victim statements concerning both charged and uncharged conduct. The PSI also raised concerns about the sincerity of Gutierrez's remorse. The LSI-R assessment stated Gutierrez "appears to make excuses and blame addiction for criminal actions," and the PSI's recommendation included commentary that "[t]he defendant appears to emphasize the negative effects on his own life rather than the impact his actions have had on the victim."

The district court's sentence was not arbitrary for failing to consider Gutierrez's substance abuse or his statements of remorse. The court reviewed the PSI, which documented Gutierrez's extensive history of substance abuse, and referenced that history in explaining the sentence it imposed. The PSI also contained information bearing on the sincerity of Gutierrez's remorse, which the court reviewed and articulated from the bench. Accordingly, the record demonstrates that the district court considered these mitigating factors but exercised its discretion in assigning them limited weight.

## V.    CONCLUSION

For the reasons set forth above, we affirm the district court's order denying Gutierrez's motion to continue the sentencing hearing. We also affirm Gutierrez's fixed life sentence.

Justices BRODY, ZAHN, and MEYER concur.

MOELLER, J., dissenting.

I reluctantly write in dissent, not because I believe Timothy Jon Gutierrez's vile conduct was undeserving of the life sentence he received, but because I believe that anyone, no matter how heinous their crimes, deserves to be sentenced by a judge who does not allow his passions to

21

overcome the reasoned application of law and due process. The words and actions of the district court that have compelled me to dissent are numerous and concerning. Please note that I use the word "compelled" with clear intention because I would not normally be inclined to diverge from the views of my esteemed colleagues so significantly. Simply put, I cannot condone what undeniably occurred here—a judge sentenced a man to life in prison *without the possibility of parole* while barring him from presenting evidence that is routinely offered in almost every sex offense case.

Here, due to no fault of Gutierrez, his trial counsel neglected to take the steps necessary to timely complete a court-ordered psychosexual evaluation ("PSE") and polygraph examination. At the time Gutierrez's plea was entered on November 8, 2023, the court scheduled sentencing for January 20, 2024, allowing just under twelve weeks to complete the necessary testing and reports it ordered. Defense counsel expressed doubt whether the reports would be prepared in time. After promising the court that he would advise it in a timely manner if there were scheduling difficulties, the court reassured defense counsel: "[w]e can always reschedule." Unfortunately, neither defense counsel nor the court did what they said they would do.

When the parties appeared in court for sentencing on the scheduled date, defense counsel advised the court that the defense was seeking a continuance because the PSE and polygraph were not completed. Defense counsel admitted that the reason the reports were not ready was "in large part due to [an] oversight of my office of scheduling the PSE." Gutierrez was in custody, and he was completely dependent on his attorney to make these arrangements. The court was understandably frustrated by defense counsel's lack of diligence, but instead of granting a continuance, it punished Gutierrez by denying his request. The court's stated reason was as follows: "we've set aside an hour for this sentencing hearing, I am not going to waste that hour."

The court then explained its reasoning for going ahead with sentencing without the PSE or the polygraph. First, "based on what [it had] seen so far," which presumably meant the presentence investigation report, the court said it was "not seeing this as a probation case." Therefore, the court concluded that a PSE was not "going to be relevant to this court." Next, the court, apparently recognizing that it had already ordered a PSE pursuant to Idaho Code section 18-8316, backtracked, stating: "I am specifically finding there's no mandate that I actually receive those [reports] before I make a sentencing decision."

As the Majority has explained, Idaho Code section 18-8316 sets forth the procedure to be followed when a court orders a PSE:

> *If ordered by the court*, an offender convicted of any offense listed in section 18-8304, Idaho Code, *may submit* to an evaluation to be *completed and submitted to the court* in the form of a written report from a certified evaluator as defined in section 18-8303, Idaho Code, for the court's consideration *prior to sentencing* and incarceration or release on probation.

I.C. § 18-8316 (emphasis added). Here, the PSE was already "ordered by the court" and there is no dispute that the defendant had "submitted" himself to the evaluation. Defense counsel had scheduled the polygraph and was working on the PSE. Yet the court did not allow the evaluation to be "completed and submitted . . . prior to sentencing." Even the court's hollow offer to allow the PSE to be completed *after* sentencing and submitted with an Idaho Criminal Rule 35 motion did not comply with the statutory requirement that the PSE be completed "*prior* to sentencing and incarceration." *Id*. (emphasis added).

By opting to forgo the PSE it had previously ordered because it did not consider this to be a "probation case," the court clearly misperceived the purpose of a PSE and of sentencing in general. Importantly, no one was even suggesting that this was a "probation case." Indeed, both the State and the defense were recommending a prison sentence, with defense counsel recommending a fifteen-year fixed sentence. Thus, the question before the court was not whether to place Gutierrez on probation; rather, it was how long his prison term should be. It should be self-evident that there is a stark difference between a fixed life sentence and a fifteen-year sentence, especially for Gutierrez, who was thirty-six years old at the time. When it decided that a PSE would have no possible bearing on the length of the prison sentence, the court effectively denied the defense an opportunity to (1) present his case for a sentence less than fixed life and (2) adequately preserve his argument for appeal.

The court then went on to explain its reasons for incarcerating Gutierrez for the rest of his life. I take no exception to the trial court's (or the Majority's) factual analysis of the reasons why a life sentence was justified based on the record before it. My only concern is that it was not a complete record. In fact, it was a limited record given the lack of a PSE prepared by a neutral expert evaluating Gutierrez's prior sexual history, his risk of recidivism, and his possibility of rehabilitation. While the presentence report was highly detailed and thorough, it did not provide the court with an expert assessment of the possibility that Gutierrez could ever be rehabilitated while serving a long prison sentence short of life. In sum, the court's assessment of Gutierrez's

23

risk and amenability to treatment were based solely on the court's own perception of the evidence it wanted to see—not on the expert evidence Gutierrez intended to offer. Ironically, this is the same evidence the court had previously ordered but later deemed unnecessary, irrelevant, and a "waste" of time.

Obviously, next to a death sentence, a fixed life sentence is the most serious sanction a court can impose. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part) ("Petitioner's life sentence without parole is the second most severe penalty permitted by law."). In 1997, this Court held that "[a] fixed or determinate life sentence is a serious penalty, and should not be imposed lightly." *State v. Jackson*, 130 Idaho 293, 294, 939 P.2d 1372, 1373 (1997). In so holding, this Court expressly cited "with approval" the following language from a notable Idaho Court of Appeals opinion authored by Judge Don Burnett:

> [A] fixed sentence should not be regarded as a judicial hedge against uncertainty. To the contrary, a fixed life term, with its rigid preclusion of parole or good time, should be regarded as a sentence requiring a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released.

*Id.* at 294–95, 939 P.2d at 1373–74 (quoting *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988)).

Based on our caselaw, life without parole should only be imposed in the most egregious of cases, and only when it is clearly established that the defendant is essentially a permanent risk to society and can never be rehabilitated. Even in terrible cases, such as this one, there still must be "certainty." *See Eubanks*, 114 Idaho at 638, 759 P.2d at 929. Certainty requires more than just a judge's anger, passion, and desire for retribution for a defendant's shocking acts of sexual abuse; it also requires that the judge consider a defendant's psychosexual history and amenability to treatment. While a judge is free to disagree with a PSE's conclusions, he should not refuse to allow a court-ordered evaluation to be completed and admitted, especially when a fixed life sentence is even remotely being considered. A sentence of life without parole should never be *predetermined* by the court based solely on the judge's sense of moral outrage regarding the defendant's actions.

No matter how terrible his crimes are, to refuse to allow a defendant to present evidence bearing on whether a fixed life sentence is necessary, merely because the judge has already made up his mind, is the height of arbitrariness. A judge cannot simply assume what a PSE might show. Our system has safeguards, grounded in due process, to protect defendants "when [a] sentencing

24

court relies upon information that is materially untrue or when the court makes materially false assumptions of fact." *State v. Gain*, 140 Idaho 170, 174, 90 P.3d 920, 924 (Ct. App. 2004) (citing *State v. Dunn*, 134 Idaho 165, 172, 997 P.2d 626, 633 (Ct. App. 2000)). As the Idaho Court of Appeals has explained:

> In order to minimize the likelihood of such due process violations, three fundamental safeguards are required: (1) the defendant must be afforded *a full opportunity to present favorable evidence*; (2) the defendant must be given a reasonable opportunity to examine all materials contained in the presentence report; and (3) the defendant must be afforded *a full opportunity to explain and rebut adverse evidence.*

*Id.* at 174–75, 90 P.3d at 924–25 (emphasis added) (citing *State v. Morgan*, 109 Idaho 1040, 1043, 712 P.2d 741, 744 (Ct. App. 1985)). What occurred in this case cannot by any stretch of the imagination be described as providing the defendant "a full opportunity to explain and rebut adverse evidence."

Taking the necessary time to deliberately consider the fate of a defendant, especially one facing a life sentence, is not "wasted" time. Indeed, it is the very essence of justice. This is true even when a person has committed crimes as depraved as this defendant's offenses. In these instances, it is still an abuse of discretion to prioritize efficiency over thoroughness and due process—particularly when imposing a fixed life sentence. I believe that, as a judiciary, we must perform—and regularly *do* perform—so much better than this. Therefore, I respectfully dissent. Moreover, I would remand this matter for a new sentencing before a different judge because a review of this judge's track record on appeal indicates that he cannot be relied upon to dispassionately sentence this defendant.[4]

---

[1] *See State v. Rose*, 175 Idaho 680, ___, 569 P.3d 501, 511 (2025) (In a case where probation was revoked based on a finding of a "willful violation" because the defendant was not accepted into a treatment court program for which she did not meet the eligibility standards, this Court held that "[t]he manner in which the district judge handled [the] case once again compels us to conclude that a new judge should be appointed on remand" and ordered "that a different district judge be assigned to preside over any future proceedings in this matter."); *Hollis v. State*, 174 Idaho 168, 177, 551 P.3d 1262, 1271 (2024) ("Here, the improper exercise of judicial discretion arbitrarily compelled appointed counsel to represent an indigent client at a critical stage in the case—despite counsel's self-assessment of his inability to ethically and competently represent his client—and essentially ensured that a judgment on the merits would not occur. This, we conclude, has created the appearance of bias and warrants the appointment of a new district judge on remand."); *State v. Allmaras*, 167 Idaho 698, 708, 475 P.3d 1220, 1230 (Ct. App. 2020) ("[T]he district court abused its discretion when it relinquished jurisdiction solely because Allmaras did not undergo a polygraph examination. . . . [W]e remand the case for further proceedings consistent with this opinion following assignment to a different district court judge."); *State v. Le Veque*, 164 Idaho 110, 117, 426 P.3d 461, 468 (2018) ("We therefore hold that . . . the district court abused its discretion when it relinquished jurisdiction over Le Veque solely because he failed to follow an ambiguous recommendation from the court. The order relinquishing jurisdiction must be vacated and a new

jurisdictional review hearing conducted. On remand, a different district judge must be assigned to decide whether Le Veque should be placed on probation."); *State v. Van Komen*, 160 Idaho 534, 540, 376 P.3d 738, 744 (2016) ("Because the district court clearly violated [d]efendant's right against self-incrimination in seeking to force him to incriminate himself regarding those potential charges, a new judge must be appointed on remand. The court's action in this case appeared vindictive because of [d]efendant's refusal to incriminate himself regarding the extent of his sexual activity with the girl.").